Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Leonard W. Aragon (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
leonard@hbsslaw.com

Attorneys for Defendants Steve W. Berman
and Hagens Berman Sobol Shapiro LLP

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MCILWAIN, LLC,<br><br>   Plaintiff,<br><br>v.<br><br>STEVE W. BERMAN, et al.,<br><br>   Defendants. | Case No.: 18-cv-03127-CW<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Date: November 6, 2018<br>Time: 2:30 p.m.<br>Courtroom: TBA<br>Judge: Honorable Claudia Wilken |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 6, 2018, at 2:30 p.m., or as soon thereafter as the matter may be heard in the above-entitled court, located at 1301 Clay Street, Oakland, California, 94612, defendants Hagens Berman Sobol Shapiro LLP and Steve W. Berman will and hereby do respectfully move this Court, under Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing the individual defendants, Steve Berman, Robert Carey, and Leonard Aragon, from this case.

This Motion is supported by this Memorandum of Points and Authorities.

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................ 1

II.  BACKGROUND ................................................................................................................. 1

    A.   The *Keller* case—litigated for six years in the Northern District of California—results in a landmark recovery for a certified class of NCAA student-athletes. ............. 1

    B.   Plaintiff filed a flawed lawsuit, refused to consolidate his case with the other related matters, resulting in Electronic Arts obtaining summary judgment against Plaintiff's client before discovery was taken. ...................................................................... 2

    C.   The Ninth Circuit affirms the *Keller* decision and the parties, including Plaintiff and his client Hart, engage in settlement discussions until Hart terminates Plaintiff and hires new counsel. ............................................................................................................ 3

    D.   The parties, including Hart and his new counsel, reach a new settlement and the court resolves all fee disputes. ............................................................................................ 5

III. ARGUMENT ........................................................................................................................ 7

    A.   The Court should dismiss the Individual Defendants from the case because Plaintiff's Complaint fails to plead any facts sufficient to hold the Individual Defendants liable for their acts done in the ordinary course of Hagens Berman's business. ............................................................................................................................... 7

IV.  CONCLUSION .................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Hart v. Electronic Arts, Inc.*,
    717 F.3d 141 (3d Cir. 2013) ...................................................................................................3

*Hart v. Electronic Arts, Inc.*,
    808 F. Supp. 2d 757 (D.N.J. 2011) ...............................................................................2, 3, 6, 9

*Keller, et al. v. Electronic Arts, Inc., et al.*
    (Case No. 09-01967) 2010 WL 530108 (N.D. Cal Feb. 8, 2010) ................................ *passim*

*In re NCAA Student-Athlete Name & Likeness Licensing Litigation*,
    724 F.3d 1268 (9th Cir. 2013) ..........................................................................................2, 3, 4

*Roman Catholic Archbishop v. Superior Court*,
    15 Cal. App. 3d 405, 93 Cal. Rptr. 338 (App. 1971) ...............................................................7

*Sonora Diamond Corp, v. Superior Court*,
    83 Cal. App. 4th 523, 99 Cal. Rptr. 2d 824 (App. 2000) .........................................................8

*Wehlage v. EmpRes Healthcare Inc.*,
    821 F. Supp. 2d 1122 (N.D. Cal. 2011) (J. Wilken) .................................................................8

*In re: Yahoo! Customer Data Security Breach Litig.*,
    Case No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. August 30, 2017) ..................1

**Statutes**

Cal. Corp. Code § 16306 ..................................................................................................................7

Wash. Rev. Code Ann. § 25.05.050 .................................................................................................7

Wash. Rev. Code Ann. § 25.05.120 .................................................................................................7

**Other Authorities**

First Amendment .........................................................................................................................3, 4

Federal Rule of Civil Procedure 4....................................................................................................7

Federal Rule of Civil Procedure 23..............................................................................................2, 3

I. INTRODUCTION

Defendants Hagens Berman Sobol Shapiro LLP ("Hagens Berman" or the "Firm") and Steve Berman respectfully move, under Federal Rule of Civil Procedure 12(b)(6), for an order dismissing the individual defendants—Steve Berman, Robert Carey, and Leonard Aragon (collectively the "Individual Defendants")—from this lawsuit.

This case arises from an alleged breach of contract between Plaintiff McIlwain's law firm and Hagens Berman, a limited liability partnership. The Individual Defendants, each a partner in Hagens Berman, did not contract with Plaintiff McIlwain or his firm, or act outside their role as partners in the Firm. Plaintiff cannot hold the Individual Defendants liable for actions taken by the limited liability partnership unless he alleges the corporation is a sham and seeks to pierce the corporate veil. Plaintiff's Complaint pleads no alter ego allegations, and instead confirms the Individual Defendants were acting in their official capacities as partners in the Firm at all relevant times. To the extent Plaintiff is entitled to a recovery, the remedy must come from Hagens Berman, not the Individual Defendants.

The Individual Defendants should be dismissed.

II. BACKGROUND

A. The *Keller* case—litigated for six years in the Northern District of California—results in a landmark recovery for a certified class of NCAA student-athletes.

On May 5, 2009, Hagens Berman filed *Keller, et al. v. Electronic Arts, Inc., et al.*, (Case No. 09-01967) in the Northern District of California.[1] This nationwide class action was the first to allege Electronic Arts, the NCAA, and the Collegiate Licensing Company used the names, images, and likenesses of college football and basketball players in videogames without their permission. Numerous related cases followed

---

[1] The Court may take judicial notice of the federal docket. *See, e.g., In re: Yahoo! Customer Data Security Breach Litig.*, Case No. 16-MD-02752-LHK, 2017 WL 3727318, at *8 (N.D. Cal. August 30, 2017).

*Keller*, including several antitrust cases, and each (except for Plaintiff's case) was consolidated in the Northern District of California and re-captioned *In re NCAA Student-Athlete Name & Likeness Licensing Litigation. Keller* Dkt. 145.

Several firms sought to be named interim lead counsel under Federal Rule of Civil Procedure 23(g), but this Court (relying on the support of several other firms) appointed Hagens Berman and Hausfeld LLP as interim co-lead counsel. *Keller* Dkt. 146. Hagens Berman was given primary responsibility for the right-of-publicity claims and Hausfeld LLP was given primary responsibility for the antitrust claims. *Id*. The two firms litigated against well-financed and aggressive defendants as co-lead counsel for five years, eventually recovering $60,000,000 for a nationwide class of student-athletes. Compl. Ex. B at 14. The recovery was the first time the NCAA agreed to pay student-athletes for the commercial use of their names, images, and likenesses while still allowing them to compete in NCAA sports. This Court commended the Firm for its efforts on behalf of the class in resolving the right-of-publicity claims. *Id*. at 20, 25.

**B.     Plaintiff filed a flawed lawsuit, refused to consolidate his case with the other related matters, resulting in Electronic Arts obtaining summary judgment against Plaintiff's client before discovery was taken.**

On June 12, 2009, Plaintiff filed a complaint in the Superior Court of New Jersey against Electronic Arts for using the names, images, and likenesses of former student-athletes Ryan Hart and Troy Taylor. On July 28, 2009, Electronic Arts moved for a more definite statement because the complaint failed to identify which games allegedly contained the plaintiffs' likenesses and what attributes constituted their likenesses. *Hart* Dkt. 23 at 2. On October 26, 2009, Plaintiff filed an amended ccomplaint ostensibly correcting the fundamental pleading errors and dropped Mr. Taylor as a plaintiff. Compl. Ex. B. at 6. Electronic Arts removed the case to federal court and moved to dismiss. *Id*.

The Honorable Freda L. Wolfson dismissed all claims with prejudice except the right-of-publicity claim, which was dismissed without prejudice. *Id 6-7*. On October 23,

2010, Plaintiff filed a second amended complaint. *Hart* Dkt. 25. On November 12, 2010, Electronic Arts moved to dismiss the pleading or in the alternative enter summary judgment. *Hart* Dkt. 31. The court granted the motion for summary judgment on September 9, 2011, finding Defendant's conduct was protected by the First Amendment. *See Hart v. Electronic Arts, Inc.*, 808 F. Supp. 2d 757 (D.N.J. 2011). Hart appealed.

Given the potential ramifications of the court's decision to allow the commercial use of athletes' names, images, and likenesses without their permission or compensation on First Amendment grounds, the players' associations for the major professional leagues hired Michael Rubin of Altshuler Berzon Nussbaum & Rubin to file an amicus and assist in litigating the appeal. *Hart v. Electronic Arts, Inc.*, 717 F.3d 141 (3d Cir. 2013); Compl. Ex. B at 7. Mr. Rubin argued the appeal to the Third Circuit, and the appellate court reversed and remanded the trial court decision. *Id*. The Third Circuit adopted the *In re NCAA Student-Athlete Name & Likeness Licensing Litigation* reasoning in rejecting Electronic Art's First Amendment defense. *Compare Keller v. Elec. Arts, Inc.*, No. 09-cv-01967, 2010 WL 530108 at *3-*5 (N.D. Cal Feb. 8, 2010) with *Hart*, 717 F.3d at 163-169.

On remand, *Hart* was not substantively litigated. *See generally Hart v. Electronic Arts, Inc. et al.* Case No. 09-cv-05990 docket. There is no indication Plaintiff served or responded to discovery. Plaintiff never sought appointment as interim lead counsel, or sought to have Mr. Hart appointed the interim class representative. *See* Fed. R. Civ. P. 23(g)(3) and (4). He never sought a pretrial schedule, engaged in a Rule 26(f) conference, or other otherwise attempted to substantively move the case forward following remand. *See generally Hart v. Electronic Arts, Inc. et al.* Case No. 09-cv-05990 docket. The trial court administratively dismissed the case on September 16, 2014. *Hart* Dkt. 102.

C. **The Ninth Circuit affirms the *Keller* decision and the parties, including Plaintiff and his client Hart, engage in settlement discussions until Hart terminates Plaintiff and hires new counsel.**

Co-lead counsel in *Keller* conducted significant discovery while Electronic Arts pursued its appeal to the Ninth Circuit. *See, e.g.,* Compl. Ex. B at 4-5. Discovery involved

3

all defendants, named class representatives, and multiple third-parties, and took place over the course of several years. *Id*. Discovery included: (1) taking and defending dozens of depositions, (2) collecting, reviewing, and coding over 257,000 documents, (3) exchanging thousands of e-mails with class members, third-parties, co-counsel, and opposing counsel, (4) resolving dozens of substantive discovery disputes, (5) propounding and responding to hundreds of requests for production, interrogatories, and requests for admission, and (6) generally litigating the case aggressively for over six years. *Id*.

On July 31, 2013, the Ninth Circuit affirmed this Court's decision rejecting EA's First Amendment defense. *In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, 724 F.3d 1268, 1279 (9th Cir. 2013). After remand, the trial court set a trial date for March 23, 2015. Compl. Ex. B. at 5. Because the *Keller* Plaintiffs (unlike Hart) engaged in substantive discovery while their case was on appeal, the *Keller* Plaintiffs were prepared to seek class certification and proceed to trial on remand. *Id*. Given the Ninth Circuit decision and impending trial date, the parties mediated with Randy Wulff on September 10, 2013. *Id*. at 9.

During that session, plaintiffs in each case settled in principle with Electronic Arts and the Collegiate Licensing Company. *Id*. At the mediation, Mr. Hart was represented by Plaintiff. *Id*. Following the mediation, counsel for each plaintiff signed an agreement regarding the distribution of fees between counsel contingent on consummating a settlement and receiving settlement approval from the clients, defendants, and court. Compl. ¶ 9; Compl. Ex. A. Following the mediation and the agreement between counsel regarding the distribution of fees, "Mr. Hart rejected the settlement and replaced his counsel [Plaintiff McIlwain], re-hiring the McKenna Law Firm along with Lum, Drasco & Positan LLC." *Id.*; *see also* Hart Dkt. 82 (explaining Plaintiff's failure to inform Hart about the settlement's existence or terms before Plaintiff approved it, and detailing Plaintiff's failure to communicate about the settlement after it was allegedly consummated."). Because Defendants would have to

4

start from the beginning with new counsel and re-negotiate terms to satisfy Mr. Hart, the settlement originally discussed at the Wulff mediation was never consummated and the agreement between counsel was, at best, irreparably breached or a nullity. *Id.*

### D. The parties, including Hart and his new counsel, reach a new settlement and the court resolves all fee disputes.

The right-of-publicity plaintiffs, including Mr. Hart and his new counsel, began re-negotiating a final settlement of all claims. *Id.* at 9. The parties worked extensively for months with the mediator, defendants, and co-counsel until May 2014, when the parties filed a proposed settlement with the Court. *Id.* Negotiations were long and tedious, in part, because Hart's new counsel had to familiarize itself with the complicated procedural, factual, and legal history of the case. The settlement included an agreement between Hart's *new* counsel and Hagens Berman to pay the McKenna Law Firm and Lum, Drasco & Positan LLC (collectively "McKenna Law Firm") $300,000 of any fee received from the Electronic Arts settlement and not to object to the lodestar claimed by them in their fee application to the court. *Id.* Hagens Berman also separately continued to negotiate with the NCAA, ultimately resolving its case against the NCAA on June 9, 2014. *Id.* at 11.

Six years after filing, this Court approved a $60,000,000 settlement for a nationwide class of student-athletes against the NCAA, the Collegiate Licensing Company, and Electronic Arts. *Id.* at 14. $40,000,000 was because of the settlement with Electronic Arts and the Collegiate Licensing Company, and $20,000,000 was because of the NCAA settlement. Compl. ¶¶ 8, 16. Plaintiff sought $4,620,000 in fees from the Electronic Arts recovery, $1,253,200 more than he seeks for the alleged breach of contract here. Compl. Ex. B. at 13; Compl. ¶ 18. To support his claim for fees in *Keller*, he made the exact allegations he uses to support his alleged breach of contract here:

> Moreover, Mr. McIlwain argues that, while he was representing the *Hart* class, he and *Keller* Plaintiffs' counsel reached an agreement that any fees awarded as part of the

5

> settlement of the right-of-publicity claims asserted in *Hart*, *Keller* and *Alston* should be split with sixty percent of the fees going to *Keller* Plaintiffs' counsel and forty percent going to Mr. McIlwain.

Compl. Ex. B at 17. The Court rejected Plaintiff's claim and awarded Mr. McIlwain $696,700 in fees, substantially less than the $3,026,005 in alleged lodestar and $4,620,000 he sought. *Id*. at 13 (claimed fees), 48 (awarded fees). Notably, the Court did not allow Plaintiff to distribute fees to attorneys and staff who allegedly worked for him. The Court ordered Electronic Arts to pay "individuals on whose behalf [Plaintiff McIlwain] seeks fees" directly and ordered Plaintiff to provide "counsel for EA the necessary information for those payments to be made." *Id*. fn.16. The Court also found Plaintiff's fee petition was "replete with entries . . . not reasonably related to the litigation or settlement of the case" leading the Court to "question[] the reliability of his [time] records" and reduce his hourly billing rate and lodestar by more than seventy percent. *Id*. at 32-48. Mr. McIlwain was awarded $405,000 for his own work. *Id*. at 35.

When allocating fees between the *Keller* Plaintiffs, represented by Hagens Berman, the *Hart* Plaintiffs and Plaintiff McIlwain, Hart's former counsel, the Court acknowledged *Hart's* minimal contribution to the common fund:

> The majority of [the remaining $6,000,000 in fees] will be allocated to *Keller* Plaintiffs' counsel to compensate them for the outstanding result they secured in this case and the risk they faced in litigating it. The court finds little evidence that the *Hart* litigation contributed to the common fund.

*Id*. at 25; *see also id*. at 31 (deducting the amount the *Keller* Plaintiffs agreed to give to Hart's new counsel from the amount due to them because *Hart* did little to contribute to the common fund.).

III.     ARGUMENT

**A.     The Court should dismiss the Individual Defendants[2] from the case because Plaintiff's Complaint fails to plead any facts sufficient to hold the Individual Defendants liable for their acts done in the ordinary course of Hagens Berman's business.**

Hagens Berman is a limited liability partnership headquartered and formed under Washington state law. Compl. ¶ 2. A limited liability partnership is a corporate entity with separate and distinct liabilities and obligations from its owner. Wash. Rev. Code Ann. § 25.05.050 ("A partnership is an entity distinct from its partners.") Plaintiff asserts three claims against Hagens Berman and the three individual partners who handled the underlying *Keller* litigation. But a partner cannot ordinarily be held personally liable for his or other partners' acts conducted in the ordinary course of partnership business. Wash. Rev. Code Ann. § 25.05.120 (partnership liable for actionable conduct of partner acting in the ordinary course of business of the partnership or with authority of the partnership.); *see also* Cal. Corp. Code § 16306 (partner not liable, directly or indirectly, "for debts, obligations, or liabilities of or chargeable to the partnership or another partner in the partnership, whether arising in tort, contract, or otherwise, that are incurred, created, or assumed by the partnership while the partnership is a registered limited liability partnership, by reason of being a partner or acting in the conduct of the business or activities of the partnership.").

To hold the Individual Defendants personally liable for Hagens Berman's alleged misdeeds, Plaintiff must plead facts to support an alter ego theory of liability. *See Roman Catholic Archbishop v. Superior Court*, 15 Cal. App. 3d 405, 411, 93 Cal. Rptr. 338 (App.

---

[2] Because defendants Robert Carey and Leonard Aragon were never served, and the time to do so has passed, the Court should now dismiss them from the case. *See* Fed. R. Civ. P. 4 (c), (m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.") Regardless, as this motion demonstrates, dismissal of all claims against Mr. Carey and Mr. Aragon is warranted for the same reasons it is warranted for Defendant Steve Berman: Plaintiff fails to state a claim for alter ego liability.

1971) (the corporate identity must be respected unless an abuse of the corporate privilege justifies the court to pierce the "corporate veil"). Under the alter ego doctrine, courts will ignore the corporate entity and deem the corporation's actions to be those of the people controlling it when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose. *Sonora Diamond Corp, v. Superior Court*, 83 Cal. App. 4th 523, 538, 99 Cal. Rptr. 2d 824, 836 (App. 2000). When a Washington corporation is sued in California, this Court has held that Washington's alter ego test applies. *Wehlage v. EmpRes Healthcare Inc.*, 821 F. Supp. 2d 1122, 1130 (N.D. Cal. 2011) (J. Wilken) (holding there is no real conflict between California and Washington's alter ego laws, and Washington law should apply to a Washington corporation given the state's strong interest in controlling the liability of business entities formed under its laws.).

Under Washington's two-part alter ego test, the "corporate form must be intentionally used to violate or evade a duty" and disregard of the corporate form "must be necessary and required to prevent unjustified loss to the injured party." *Wehlage*, 821 F. Supp. 2d at 1130 (citing *Meisel v. M & N Modern Hydraulic Press Co.*, 97 Wash.2d 403, 410, 645 P.2d 689 (1982)). To meet the first prong, Plaintiff must show Defendants' alleged wrongful conduct constituted "fraud, misrepresentation, or some form of manipulation of the corporation to the stockholder's benefit and creditor's detriment." *Id.* To satisfy the second prong, Plaintiff must show this intentional conduct caused his harm. *Id.* Harm alone, or even the absence of a remedy alone, does not establish corporate misconduct because using a corporate entity limits the liability of its owners. *Id.* at 1131 (citing *Norhawk Investments, Inc. v. Subway Sandwich Shops, Inc.*, 61 Wash. App. 395, 400, 811 P.2d 221 (1991)).

Here, Plaintiff's Complaint is devoid of facts alleging the Individual Defendants intentionally abused the Hagens Berman entity to engage in fraud or misrepresentation to Plaintiff's detriment. Plaintiff makes no allegations that Hagens Berman is a sham entity or that the Individual Defendants acted outside the ordinary course of business

8

1  for attorneys litigating a case on the Firm's behalf. *See* Compl. at ¶ 5 (alleging
2  Defendants Carey and Aragon were present at a meeting with Plaintiff and others "to
3  discuss a plan for the *Keller* and *Hart* cases…") and ¶¶ 9-10 (alleging that Defendant
4  Hagens Berman contracted with Plaintiff for the division of fees, not the Individual
5  Defendants). To the extent Plaintiff is entitled to relief, and he is not, his remedy is
6  limited to suing and obtaining relief from Hagens Berman, and without more he cannot
7  pierce the corporate veil and hold the Individual Defendants liable for Hagens
8  Berman's alleged misconduct.

## IV.  CONCLUSION

Nothing in the complaint can reasonably be construed to allow Plaintiff to pierce the corporate veil. Plaintiff admits the Individual Defendants acted in their official capacities as partners in the Firm at all times, and that the alleged contract giving rise to the case was between firms, not individuals. Attorneys litigating a case cannot be held individually liable for acting in their official capacities as attorneys in the firm. Defendants Steve Berman, Robert Carey, and Leonard Aragon should be dismissed from this case with prejudice.

Dated: September 21, 2018

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By    /s/ Leonard W. Aragon
  LEONARD W. ARAGON
Leonard W. Aragon (*pro hac vice*)
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003

Shana E. Scarlett (217895)
715 Hearst Avenue, Suite 202
Berkeley, California 94710

Attorneys for Defendants Steve W. Berman and Hagens Berman Sobol Shapiro LLP