Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Leonard W. Aragon (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
leonard@hbsslaw.com

Attorneys for Defendant
Hagens Berman Sobol Shapiro LLP

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MCILWAIN, LLC,<br><br>  Plaintiff,<br><br>v.<br><br>STEVE W. BERMAN, et al.,<br><br>  Defendants. | Case No.: 18-cv-03127-CW<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO REVOKE TIMOTHY MCILWAIN'S PRO HAC VICE ADMISSION**<br><br>Date: September 10, 2019<br>Time: 2:30 p.m.<br>Courtroom: 6, 2nd Floor<br>Judge: Honorable Claudia Wilken |

1   **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2   **PLEASE TAKE NOTICE** that on September 10, 2019, at 2:30 p.m., or as soon

3   thereafter as the matter may be heard in the above-entitled court, located at 1301 Clay

4   Street, Oakland, California, 94612, Defendant Hagens Berman Sobol Shapiro LLP will

5   and hereby does respectfully move this Court, under Civil L.R. 11-3 and 11-4 for an

6   order revoking Timothy McIlwain's pro hac vice admission. Defendant also seeks

7   attorneys' fees and costs incurred in filing this motion under 28 U.S.C. § 1927 and the

8   Court's inherent power to sanction attorney misconduct.

9   Mr. McIlwain was admitted pro hac vice to represent Plaintiff McIlwain LLC. He

10  has not met his duty to comply with the Local Rules of this Court, the Standards of

11  Professional Conduct, or the Alternative Dispute Resolution Local Rules when litigating

12  this case. Mr. McIlwain has consistently and repeatedly made false promises to counsel,

13  refused to respond to discovery, refused to meet and confer regarding discovery

14  disputes, failed to meet agreed upon deadlines, refused to cooperate in discovery, failed

15  to personally attend the court-ordered mediation, and refused to give any plausible

16  reason for his failure to personally attend the mediation. Mr. McIlwain's failure to meet

17  his pro hac vice duties makes it impossible to efficiently and properly litigate this

18  matter; therefore Defendant Hagens Berman Sobol Shapiro LLP respectfully requests

19  the Court revoke Mr. McIlwain's pro hac vice admission, and award Defendant the fees

20  and costs incurred in filing this Motion.

21  This Motion is supported by this Memorandum of Points and Authorities and

22  the concurrently filed Declaration of Leonard W. Aragon.

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2  MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

3     I.    Introduction ........................................................................................................ 1

4     II.   Background.......................................................................................................... 1

5
6        A.    McIlwain is unprepared for the initial 26(f) meeting, and then fails to meet his promise to provide ESI information. ................................................................... 2

7
8        B.    McIlwain refuses to respond to Defendant's Request for Production until after the fact discovery deadline, and then fails (on multiple occasions) to fulfill his promise to supplement his deficient responses. ............................................... 3

9
10           1.   McIlwain used relevant, non-privileged, undisclosed documents during the depositions. ................................................................................................... 4

11
12           2.   McIlwain failed to respond to the Request for Production even after Ryan Hart, his former client, waived the attorney-client privilege—ostensibly, the basis for his failure to disclose. ............................................................................... 5

13
14        C.    McIlwain refuses to meet and confer in good faith, and when he does meet and confer he is unprepared and fails to fulfill his own promises. ............................... 6

15
16        D.    McIlwain fails to timely respond to discovery......................................................... 7

17        E.   McIlwain lies about his Response to Defendant's Request for Production. .......... 8

18        F.   McIlwain and his co-counsel fail to attend the ADR session in person and refuse to provide plausible reasons why they did not personally attend. ............................... 9

19
20     III.  Argument............................................................................................................... 11

21        A.    Since being admitted pro hac vice, McIlwain failed to meet his duty to follow Civil L.R. 11-4................................................................................................................ 11

22           1.   McIlwain failed to comply with the Standards of Professional Conduct. ........ 12

23        B.    McIlwain failed to satisfy the ADR Local Rules. ................................................. 14

24
25        C.    McIlwain violated Rule 8.1 by falsely stating on his pro hac vice application that he would comply with the Standards of Professional Conduct........................... 16

26
27     IV.  Conclusion ............................................................................................................ 17

27

28

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4
5

*Chambers v. Nasco, Inc.,*
    501 U.S. 32, 111 S.Ct. 2123 (1991) .......................................................................12

6
7

*In the Matter of Jeffers,*
    3 Cal. State Bar Ct. Rptr. 211, 219 (Review Dept. 1994). ................................13

8
9

*In re NCAA Student-Athlete Name & Likeness Licensing Litigation,*
    No. 09-cv-01967 (N.D. Cal.) ..............................................................................1

*In the Matter of Respondent K,*
    2 Cal. State Bar Ct. Rptr. 335, 353 (Review Dept. 1993). ................................13

10
11

*Rietveld v. Rosebud Storage Partners, L.P.,*
    121 Cal. App. 4th 250, 16 Cal. Rptr. 3d 791 (Cal. Ct. App. 2004)....................16

12

**Statutes**

13

28 U.S.C. § 1927 .........................................................................................................1

14

California Business & Professional Code § 6106 ................................................12

15

**Other Authorities**

16

California Rule of Professional Conduct 3.2 ................................................13, 14

17
18

California Rule of Professional Conduct 4.1 ..........................................12, 14, 16

19

California Rule of Professional Conduct 8.1 ..........................................16, 17

20

California Rule of Professional Conduct 8.4 ..........................................12, 14, 16

21

Civil Local Rule 6-7 ..........................................................9, 10, 11, 14, 15

22

Civil Local Rule 6-10..........................................................................9, 15

23

Civil Local Rule 7 ..............................................................................17

24

Civil Local Rule 11-4..........................................................................11, 15, 16

25

Civil Local Rule 37-1..........................................................................17

26

Federal Rule of Civil Procedure 26............................................... *passim*

27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction

Attorney Timothy McIlwain ("McIlwain") was granted the privilege of pro hac vice admission. His admission was conditioned on complying with the California Standards of Professional Conduct and the Local Rules for the Northern District of California. McIlwain also swore under penalty of perjury that he would familiarize himself with the California Standards of Professional Conduct and Local Rules. Despite his promises and duties, McIlwain has consistently and repeatedly failed to meet his obligations by constantly making false statements to opposing counsel, refusing to respond to and supplement discovery, refusing to meet and confer regarding discovery disputes, failing to meet agreed upon deadlines, failing to prepare and submit a mediation statement as required by the ADR Local Rules, and failing to personally attend the court-ordered mediation in this matter, as mandated by the ADR Local Rules. McIlwain's failure to meet his pro hac vice duties makes it impossible to fairly and efficiently litigate this case. Defendant Hagens Berman Sobol Shapiro LLP ("Hagens Berman" or the "Firm") respectfully requests the Court revoke McIlwain's pro hac vice admission under Civil L.R. 11-3 and 11-4, and award attorneys' fees and costs incurred in filing this Motion under 28 U.S.C. § 1927 and the Court's inherent power to sanction attorney misconduct.

### II.    Background

Plaintiff McIlwain, LLC filed suit against Hagens Berman Sobol Shapiro LLP ("Hagens Berman" or the "Firm") for allegedly breaching a contract between the parties to share fees in *In re NCAA Student-Athlete Name & Likeness Licensing Litigation,* No. 09-cv-01967 (N.D. Cal.). Timothy McIlwain is the sole member of McIlwain, LLC. On January 22, 2019, McIlwain applied for pro hac vice admission. In his application, McIlwain declared under penalty of perjury: "I agree to familiarize myself with, and abide by, the Local Rules of this Court, especially the Standards of Professional Conduct for attorneys and the Alternative Dispute Resolution Local Rules." Based on his

1

1   declaration, the Court granted his motion on February 4, 2019, subject to the terms and

2   conditions of Civil L.R. 11-3. Dkt. 74.

3       **A.    McIlwain is unprepared for the initial 26(f) meeting, and then fails to**

4           **meet his promise to provide ESI information.**

5       Almost immediately after being admitted pro hac vice, McIlwain began ignoring

6   his Rule 26(f) obligations. At the initial Rule 26(f) conference McIlwain was unprepared

7   to substantively discuss information under the Rule. Aragon Dec., ¶ 3. Plaintiff,

8   however, agreed to provide 26(f) information forthwith, including the source and

9   location of electronically stored information. *Id*. Based on this promise and to avoid a

10  discovery dispute early in the litigation, we included in our Joint Case Management

11  Statement and Proposed Order a statement that: "Plaintiff has also agreed to provide

12  additional information regarding the location of his electronically stored information."

13  *Id*. at ¶ 4. On January 16, 2019, Hagens Berman began asking McIlwain for the

14  information he agreed to turn over under the Court's case management order. *Id*. at ¶ 6.

15  The Firm then sent 13 follow-up emails (*Id*. at ¶¶ 7, 9, 11, 15, 16, 18, 19, 22, 23-24, 25, 26,

16  36, and 58), including four emails detailing exactly what was sought under Rule 26(f).

17  *Id*. at ¶¶ 9, 15, 24, 36. McIlwain never substantively responded to these requests, but his

18  co-counsel twice promised to provide the requested information and the order granting

19  pro hac vice admission states: "Service of papers upon, and communication with local

20  co-counsel designated in the application will constitute notice to the party." *Id*. at ¶¶ 8,

21  10; Dkt. 74. McIlwain and his co-counsel never fulfilled the promise to provide

22  information under Rule 26(f). *Id*. at ¶ 83.

23      The parties met and conferred to discuss Rule 26(f) on three occasions. *Id*. at ¶¶ 2,

24  27, 83. McIlwain initially agreed to provide the information, but never fulfilled his

25  promise. *Id*. at ¶ 36. Later, he refused to meet and confer on the subject. *Id*. at ¶¶ 36, 58-

26  61. At the most recent meet and confer on June 19, 2019, Plaintiff claimed he did not

27  understand what was being requested and appeared not to understand his discovery

28  obligations, despite stipulating to the Court that he would provide ESI information to

2

opposing counsel under Rule 26(f) and multiple emails from the Firm detailing exactly what was being requested. *Id.* at ¶ 83. Oddly, on July 4, 2019, McIlwain sent a "26(f) template" that appears to be a case management plan. *Id.* at ¶ 84.

### B. McIlwain refuses to respond to Defendant's Request for Production until after the fact discovery deadline, and then fails (on multiple occasions) to fulfill his promise to supplement his deficient responses.

Realizing that McIlwain was unlikely to substantively respond to Hagens Berman's requests regarding Rule 26(f), and not wanting to trouble the Court with a discovery dispute, Hagens Berman served a Request for Production on February 1, 2019. *Id.* at ¶ 12. Hagens Berman hoped a substantive response containing ESI would resolve the Rule 26(f) dispute or allow the Firm to obtain the information from other sources. *Id.* at ¶ 13. On February 21, 2019, McIlwain requested a 30-day extension of time to respond to the Request for Production. *Id.* at ¶ 21. Hagens Berman denied the request because past dealings with McIlwain suggested that any response McIlwain provided would not be substantive. *Id.* Predictably, McIlwain did not respond to the Request for Production or otherwise produce responsive documents on the due date. *Id.* at ¶ 25. Nor did he seek an extension from the Court. *Id.*

On March 5, 2019, Hagens Berman sent a detailed email to McIlwain explaining that he missed the deadline to respond to Defendant's Request for Production, and requested a meet and confer. *Id.* McIlwain did not respond. Hagens Berman sent a second request. *Id.* at ¶ 26. On March 7, 2019, the parties met and conferred, and McIlwain agreed to respond to the Request for Production by March 14, 2019. *Id.* at ¶ 27. McIlwain failed to meet the deadline.

Immediately after McIlwain missed his own deadline, the Firm sent a follow-up email reminding McIlwain the parties needed to meet and confer regarding his client's failure to respond to the Firm's Request for Production. *Id.* at ¶ 32. The next day McIlwain responded, stating for the first time that the response was delayed because Hagens Berman had not obtained a waiver of the attorney-client privilege from Plaintiff's former client, Ryan Hart. *Id.* at ¶ 33. Hagens Berman responded that a claim

3

of privilege claim does not excuse Plaintiff from responding to the Request for

Production, and that Ryan Hart was Hagens Berman's client under this Court's order in

the underlying litigation, which would negate any claim of privilege. *Id*. The Firm also

noted that Plaintiff should still respond to the request, produce non-privileged

documents, and produce a privilege log for all privileged documents. *Id*. at ¶ 35.

McIlwain ignored the email and did not produce documents or a privilege log.

By March 18, 2019, McIlwain, LLC missed the due date for responding to

Defendant's Request for Production set by the Federal Rules and his own self-granted

extension of March 14, 2019. *Id*. at ¶ 37. Because depositions were scheduled for the

week of April 1, Plaintiff had not yet responded to the Firm's document request, and

the Firm was attempting to secure the newly requested waiver of the attorney-client

privilege from Plaintiff's former client, the parties agreed to continue Mr. Hart's and

McIlwain, LLC's depositions to a date after McIlwain produced documents and

Mr. Hart waived the attorney-client privilege. *Id*. at ¶ 39. The parties, however, went

forward with McIlwain's personal deposition and the 30(b)(6) deposition of Hagens

Berman. *Id*. at ¶¶ 40, 42.

### 1. McIlwain used relevant, non-privileged, undisclosed documents during the depositions.

During both depositions McIlwain would selectively pull documents he believed

were relevant to the litigation from a hard-copy folder and ask counsel or the deponent

to review them. *Id*. at ¶ 43. The documents were never previously disclosed or bates

stamped, and were extraordinarily relevant to the claims and defenses in the case. *Id*.

Counsel for Hagens Berman agreed to accept the documents and reviewed them (to the

best of his ability at the deposition), but confirmed he was doing so as a courtesy and

not in lieu of a substantive response to the Firm's document requests. *Id*. Counsel also

demanded that McIlwain's deposition remain open until Plaintiff fulfilled its

obligations to respond to Hagens Berman's Request for Production. *Id*. McIlwain agreed

to leave the deposition open and confirmed that a document production was forthcoming. *Id.*

He then confirmed on at least three occasions that a document production was forthcoming, and counsel for the Firm confirmed in writing the promises made by McIlwain. *Id.* at ¶¶ 40, 41, 42, 46. McIlwain failed to fulfill his promises. *Id.* at ¶ 55. Indeed, McIlwain never served the documents he relied on at the deposition before the close of discovery. *Id.*

> ### 2. McIlwain failed to respond to the Request for Production even after Ryan Hart, his former client, waived the attorney-client privilege — ostensibly, the basis for his failure to disclose.

On Tuesday, April 9, 2019, Ryan Hart — McIlwain's former client in the underlying matter — sent a letter waiving the attorney-client privilege and authorizing McIlwain and McIlwain, LLC to release any and all documents to Defendant Hagens Berman. *Id.* at ¶ 44. Given the waiver, Hagens Berman gave Plaintiff one more opportunity to respond to the Request for Production, even agreeing to accept a rolling production. *Id.* at ¶ 45. McIlwain agreed to respond by April 17, 2019, two days <u>after</u> discovery closed. *Id.* at ¶ 46. McIlwain never fulfilled his promise. *Id.* at ¶ 50.

Nine days after discovery closed, Plaintiff served a response to the Firm's Request for Production, but no documents were attached. *Id.* at ¶ 50. Two weeks after discovery closed, Defendant finally received documents from Plaintiff. *Id.* at ¶ 55. The production was deficient, and the parties met and conferred to address the deficiencies on April 29, 2019. *Id.* at ¶ 59. McIlwain agreed to supplement his production by May 3, 2019. *Id.* Hagens Berman sent five follow-up communications reminding him to supplement his response. *Id.* at ¶¶ 60, 64, 80, 81, 82. On June 19, 2019, McIlwain asked Defendant to send his own document production to him (he did not retain a copy) so that he did not send duplicates when he supplemented his production, and agreed to supplement by June 21, 2019. *Id.* at 82. Defendant agreed and even bates stamped Plaintiff's previous document production as a courtesy, and sent it to him on June 20,

MOTION TO REVOKE PRO HAC VICE ADMISSION                                    18-cv-03127-CW

2019, to facilitate his supplemental production. Despite this courtesy by opposing counsel, McIlwain did not supplement his production as promised. *Id.*

 On July 9, 2019, Hagens Berman received a supplemental production from McIlwain—over two-weeks after McIlwain promised to send the documents. *Id.* at ¶ 85.

### C. McIlwain refuses to meet and confer in good faith, and when he does meet and confer he is unprepared and fails to fulfill his own promises.

McIlwain refuses to complete the meet and confer process in good faith. For example, on March 7, 2019, the parties agreed to meet and confer regarding Plaintiff's untimely discovery responses, ESI, and Rule 26(f) issues. *Id.* ¶ 27. The parties completed the meet and confer regarding the untimely responses, but before the parties could discuss their ESI dispute or Rule 26(f), McIlwain said he had to leave the conference but agreed to "call back" later that day to complete the meet and confer. *Id.* He did not call back. *Id.*

Hagens Berman contacted McIlwain to complete the conference the next day; Plaintiff again agreed to "call back," but never called. *Id.* at ¶ 28. Counsel for Hagens Berman tried to contact McIlwain, but he did not answer and counsel was unable to leave messages because his voicemail was full. *Id.* ¶ 28. The next day, McIlwain agreed to complete the meet and confer by email, but did not initiate a call. *Id.* at ¶ 29. Three days later, the Firm sent a follow-up reminding Plaintiff the parties needed to complete the meet and confer process, a prerequisite to filing a discovery dispute under the local rules. *Id.* at ¶ 30. McIlwain agreed to meet and confer, and asked for dates and times to conduct the meeting. Hagens Berman immediately provided dates and times, but McIlwain never responded. *Id.* at ¶ 31. On March 17, 2019, undersigned counsel sent a follow-up reminding him the parties need to complete the meet and confer. *Id.* at ¶ 32. The next day, Mr. McIlwain sent an email addressing several other issues, but ignored the meet and confer request. *Id.* ¶ 33.

When McIlwain is able to meet and confer, he is generally unprepared and unable to commit sufficient time to complete the process. For example, when the parties

were finally able to schedule a meet and confer regarding ESI, McIlwain claimed not to know what the Firm was seeking—despite emails detailing exactly what the Firm was seeking. *Id*. at ¶¶ 9, 15, 24, 36, 57, 83; *see also* Dkt. 70 (Joint Case Management Statement: "Plaintiff has also agreed to provide additional information regarding the location of his electronically stored information."). Indeed, it appears McIlwain does not understand and made no attempt to understand his obligations under the Federal Rules or his duty to comply with this Court's Case Management Order or his own promises regarding ESI. *Id*.; *see also* Dkt. 71 (Minute Order and Case Management Order adopting parties' Joint Case Management Statement). And when the parties met and conferred on March 7, 2019 and April 29, 2019, respectively, McIlwain was forced to end the call before the parties completed the meet and confer process. *Id*. ¶¶ 27, 59. He then promised to continue the meet and confer process forthwith, but then refused to do so by ignoring requests to reschedule the meeting or misrepresenting his availability. *See, e.g., Id*. ¶¶ 28-36; 60-64.

Plaintiff's inability to meet and confer in good faith occurs even when the meet and confer process is in his own interest. For example, Plaintiff's First Set of Requests for Production of Documents to Hagens Berman are egregiously overbroad, vague, and ambiguous. *Id*. at ¶ 56. They seek documents unrelated to this case, and appear to be written to harass and unduly burden the Firm. *Id*. Hagens Berman requested to meet and confer with McIlwain on at least four occasions to resolve the Firm's objections (and possibly provide additional documents), but he has refused to meet and confer. *Id*. ¶¶ 58, 60, 62, 64.

### D.    McIlwain fails to timely respond to discovery.

In addition to failing to respond to and timely supplement his discovery, McIlwain did not timely respond to Hagens Berman's Non-Uniform Interrogatories, and his responses are egregiously deficient. Hagens Berman served interrogatories on April 15, 2019. *Id*. ¶ 48. Plaintiff missed the deadline to respond, and Defendant asked McIlwain to provide an update on the status of his interrogatory responses on May 22,

1 | 2019. *Id*. at ¶ 81. McIlwain did not respond to the request. *Id*. On June 19, 2019, the

2 | parties met and conferred regarding the untimely interrogatory responses. *Id*. at ¶ 82.

3 | McIlwain, for the first time, claimed that he did not respond because the requests were

4 | untimely, but agreed to provide a response by June 26, 2019. *Id*. The Firm sent an email

5 | on June 19, 2019, confirming McIlwain's promise. *Id*. McIlwain failed to meet his own

6 | deadline.

7 |      On July 9, 2019, Defendant received a facially deficient Interrogatory response

8 | from McIlwain. *Id*. at ¶ 85. The Firm tried to set a meet and confer with McIlwain to

9 | discuss the deficiencies to no avail. First, he ignored the request to meet and confer, and

10 | then he cancelled the agreed upon meet and confer. *Id*. As of the filing of this Motion,

11 | the Firm has been unable to schedule a meet and confer. *Id*.

12 |      McIlwain also claims he is withholding documents protected by the attorney-

13 | client privilege. *Id*. ¶ 51. Counsel requested a privilege log on several occasions, but

14 | McIlwain refuses to produce one. *Id*. ¶ 37, 46, 51, 52, 80.

### E.    McIlwain lies about his Response to Defendant's Request for Production.

17 |      McIlwain finally served a (deficient) response to the Firm's Request for

18 | Production on April 24, 2019, but did not provide documents. *Id*. ¶ 50. On April 25,

19 | undersigned counsel asked for the documents referenced in his response; McIlwain

20 | responded by claiming he sent the documents by FedEx and provided a tracking

21 | number. *Id*. ¶ 53. Counsel entered the tracking number into the FedEx website—it did

22 | not work. *Id*. On April 27, 2019, McIlwain sent a picture of a FedEx packing slip with a

23 | handwritten send date of April 25, 2019. *Id*. ¶ 54. The package arrived on April 29, 2019.

24 | The electronic packing slip confirmed that the package was not picked up until the

25 | evening of Friday, April 26, 2019—two days <u>after</u> McIlwain claims he sent the package.

26 | *Id*. As such, McIlwain did not send the package when he claimed, and sent documents

27 | only after undersigned counsel complained that documents were not attached to the

28 | response.

MOTION TO REVOKE PRO HAC VICE ADMISSION                                   18-cv-03127-CW

1

2

     **F.**    **McIlwain and his co-counsel fail to attend the ADR session in person and refuse to provide plausible reasons why they did not personally attend.**

3

    With the parties' consent and under the ADR Local Rules, a mediation was

4

scheduled by mediator David Meadows for May 20, 2019, at 10:00 A.M., at the office of

5

Hagens Berman in Berkeley, California. Mr. Meadows asked the parties to sign a

6

confidentiality agreement, and submit mediation statements—listing several topics he

7

wanted us to cover under ADR L.R. 6-7, and to sign a confidentiality agreement. *Id*. ¶

8

66. The letter confirming the mediation stated: "each party, trial attorney, and insurance

9

representative (if any) should attend, as well as anyone else whose approval will be

10

required." *Id.* ADR L.R. 6-10(a) also requires attendance by all named parties and their

11

counsel absent "extraordinary or otherwise unjustifiable hardship." ADR L.R. 6-10(d).

12

    On May 13, 2019, counsel for Defendant sent a signed confidentiality agreement

13

to Mr. Meadows per his request, and served McIlwain with the same agreement. That

14

same day, McIlwain informed Defendant by phone that he would send a signed

15

confidentiality agreement later that day to facilitate the exchange of mediation

16

statements. *Id*. ¶ 67. He did not fulfill his promise. *Id*. The next day, McIlwain signed the

17

confidentiality agreement. *Id*. ¶ 68. Shortly thereafter, counsel for Defendant sent a

18

mediation statement to the mediator and McIlwain that fully complied with Mr.

19

Meadows' letter and ADR L.R. 6-7. *Id*. McIlwain, however, did not submit a mediation

20

statement under ADR L.R. 6-7. *Id*. ¶ 69. Instead, after receiving Hagens Berman's

21

mediation statement, he sent a letter attaching his summary judgment motion. *Id*. He

22

did not address the topics in ADR L.R. 6-7 or those set forth by the mediator. *Id*.

23

    On May 20, 2019, counsel for Hagens Berman traveled to Berkeley from Phoenix,

24

Arizona to attend the mediation. When he arrived, he learned that McIlwain had

25

contacted the mediator and informed him that he was not able to attend because his

26

flight was cancelled. *Id*. ¶ 70. Plaintiff and its counsel, including McIlwain, never

27

informed Hagens Berman that they were not attending the mediation in person. *Id*. At

28

the mediation, the mediator told the Firm that McIlwain claimed his flight was

1    cancelled late at night on May 19, 2019, and that he was in Denver, Colorado. *Id.* ¶ 70.

2    The parties attempted to conduct the mediation by phone, but the session ended

3    quickly with no progress or meaningful discussions. *Id.*

4           Following the mediation, undersigned counsel sent McIlwain and his co-counsel

5    an email reminding them that the ADR rules require the parties and their attorneys to

6    attend the mediation in person. *Id.* ¶ 71. Counsel then asked them to explain why

7    Plaintiff was unrepresented at the mediation when there was ample time to schedule a

8    flight from Denver to Oakland, San Jose, or San Francisco for a mediation that started at

9    10:00 A.M., and could have been postponed to accommodate the delay. *Id.* Counsel also

10   asked why Mr. Schein, Plaintiff's local counsel, was unable to attend, and why Hagens

11   Berman was not notified that no one was going to attend the mediation on Plaintiff's

12   behalf. *Id.* McIlwain responded to the request by stating that his "connecting flight on

13   frontier was delayed until almost midnight then canceled." *Id.* ¶ 73. He claims he

14   "tried" to book on Southwest Airlines, but all seats that would have gotten him to the

15   mediation on time were sold. *Id.* He also claimed to have hotel and flight bookings "if

16   you want proof." *Id.*

17          Counsel accepted his offer, and asked him to provide any and all information he

18   has showing he was unable to attend the mediation. *Id.* ¶ 74. Counsel also asked him to

19   explain why he could not fly a non-Southwest airline to one of the three Bay Area

20   airports, and confirmed that counsel was able to find plenty of last-minute flights from

21   Denver to the Bay Area that would have gotten him to the mediation on time. *Id.*

22   Counsel also asked, again, why Mr. Schein could not attend. *Id.* McIlwain responded by

23   saying I will "get all the proof you request including the hotel I stayed in Colorado." *Id.*

24   ¶ 75. He then refused to explain why Mr. Schein did not appear, only stating that Mr.

25   Schein did not have authority to settle. *Id.* ¶ 75.

26          On May 26, 2019, McIlwain sent a letter from the airline apologizing for

27   cancelling the flights. *Id.* ¶ 76. His email stated, "Let me know if you want the San

28   Francisco hotel room and flight back." On May 28, 2019, counsel sent a detailed email

1    asking McIlwain for his itinerary, and an explanation why he was unable to take a flight

2    from Denver—ostensibly where his flight was cancelled—to San Francisco/San

3    Jose/Oakland to attend the mediation. *Id.* ¶ 77. Counsel also asked why McIlwain did

4    not inform Hagens Berman that he was not able to attend the mediation in person, and

5    accepted his offer to review the hotel and flight information he said he would provide

6    on May 26, 2019. *Id.* He did not provide the information he promised or the information

7    requested by counsel. *Id.*

8           On June 18, 2019, counsel asked McIlwain whether he was going to provide

9    additional information regarding his failure to appear at the mediation, including why

10   local counsel was unable to attend the mediation. *Id.* ¶ 78. He responded by saying he is

11   an "attorney," and therefore I should take his statement as true and refused to provide

12   additional information. *Id.* With his recent supplemental document production it does

13   appear that McIlwain provided some information regarding his stay in Colorado, but

14   he never provided the information showing why he was unable to re-book his flight to

15   attend the mediation in person or why Mr. Schein was unable to attend in person. *Id.*

16   Nor did he explain why Defendant's counsel was not informed that McIlwain or Mr.

17   Schein were not going to attend the mediation until after the mediation commenced. *Id.*

18   **III.    Argument**

19          **A.    Since being admitted pro hac vice, McIlwain failed to meet his duty to
20                 follow Civil L.R. 11-4.**

21          Civil L.R. 11-4 requires attorneys admitted pro hac vice to (1) follow the

22   California Standards of Professional Conduct; (2) follow the Local Rules of this Court;

23   (3) maintain respect due to courts of justice and judicial officers; and (4) practice with

24   the honesty, care, and decorum required for the fair and efficient administration of

25   justice. Civil L.R. 11-4(a)(1)-(4)). McIlwain's application for pro hac vice stated, under

26   penalty of perjury, that he agreed to familiarize himself with, and abide by, the Local

27   Rules of this Court, "especially the Standards of Professional Conduct for attorneys and

28   the Alternative Dispute Resolution Local Rules." Dkt. 74. Because McIlwain has failed

11

to meet his obligations under Civil L.R. 11-4, his pro hac vice admission should be revoked. *See Chambers v. Nasco, Inc.*, 501 U.S. 32, 42, 111 S.Ct. 2123, 2132 (1991) (holding federal courts have the power to control admission to its bar and to discipline attorneys who appear before it).

### 1. McIlwain failed to comply with the Standards of Professional Conduct.

The California Rules of Professional Conduct prohibit its members from making false statements. *See* Cal. Rules of Prof. Conduct, Rule 4.1 (prohibiting false statements of material fact or law to a third person when representing a client); Rule 8.4 (defining professional misconduct as engaging "in conduct involving dishonesty, fraud, deceit, or reckless or intentional misrepresentation."). Attorneys admitted pro hac vice are also bound by CAL. BUS. AND PROF. CODE § 6106, allowing any act involving dishonesty to constitute cause for disbarment or suspension. *See also* Cal. Rules of Prof. Conduct, Rule 8.4, Comment [4] (recognizing that lawyers may be disciplined under § 6106 for acts involving dishonesty whether "intentional, reckless or grossly negligent").

Here, McIlwain made multiple false statements to opposing counsel. The following illustrates the pervasive nature of his improper conduct:

- Falsely stating in the Joint Case Management Statement (adopted by the Court) that he would provide additional information regarding ESI.

- Promising to remedy his late response to Defendant's Request for Production, and then failing to do so before the end of discovery.

- Promising on five occasions to respond to Defendant's Request for Production by a specific date and then failing to do so.

- Promising to supplement his deficient and untimely response to Defendant's Request for Production by a certain date, and then failing to do so.

- Agreeing to produce responses to Defendant's Interrogatories by a certain date, and then failing to do so.

1   • Agreeing to meet and confer or continue to the meet and confer process, and
2     then failing to fulfill his promise.

3   • Falsely stating the date he sent his Response to Defendant's Request for
4     Production, and then providing false documents to "prove" he sent the materials
5     earlier.

6   • Agreeing to provide documentation showing why he was unable to personally
7     attend the mediation, and then not fulfilling his promise.

8        It is axiomatic that McIlwain cannot lie to opposing counsel, especially when his

9   misrepresentations are constant and substantive. *See, e.g., In the Matter of Jeffers*, 3 Cal.

10  State Bar Ct. Rptr. 211, 219 (Review Dept. 1994) (holding "[A]ttorneys are required to

11  refrain from deceptive acts without qualifications.") (citations omitted). McIlwain's

12  intentional misrepresentations clearly violate the California Rules of Professional

13  Conduct. *See In the Matter of Respondent K*, 2 Cal. State Bar Ct. Rptr. 335, 353 (Review

14  Dept. 1993) (recognizing that dishonest acts by an attorney are grounds for suspension

15  or disbarment). As such, McIlwain's egregious and pervasive conduct should preclude

16  him from practicing law in this Court.

17        McIlwain's pattern of deceptive conduct also violates Rule 3.2 because his

18  misrepresentations had no substantial purpose other than delay. *See* Cal. Rules of Prof.

19  Conduct, Rule 3.2 (prohibiting actions that have no substantial purpose other than to

20  delay). The practical result of McIlwain's constant misrepresentations is that he

21  unnecessarily delayed and increased the costs of discovery. McIlwain's failure to meet

22  basic discovery obligations could be excused if they were infrequent. But here,

23  McIlwain has missed almost every deadline, including extensions. There is no

24  justification, and McIlwain has provided none, for constantly missing deadlines,

25  especially those agreed to by McIlwain during the meet and confer process. The only

26  basis for his conduct is delay; as such, McIlwain violated Rule 3.2 and should not be

27  permitted to practice in this Court.

28

1   McIlwain's failure to meet and confer in good faith has also prevented counsel

2   from efficiently conducting discovery and presenting discovery disputes to the Court, a

3   violation of Rule 8.4(d). *See* Cal. Rules of Prof. Conduct Rule 8.4(d) (prohibiting conduct

4   that is prejudicial to the administration of justice); *see also* Civil L.R. 11-4 (requiring

5   attorneys permitted to practice in this Court to: "Practice with the honesty, care, and

6   decorum required for the fair and efficient administration of justice.").[1] Here, McIlwain

7   avoided—and continues to avoid—the meet and confer process. When he does meet

8   and confer, he agrees to resolve or help resolve the issues giving rise to the dispute, but

9   then fails to keep those promises, stringing Defendant's counsel along just enough to

10  avoid submitting the matter to the Court. *See, e.g.*, Sec. II.C. Likewise, it was improper

11  for McIlwain to use discoverable documents at a deposition while simultaneously

12  refusing to respond to discovery of not just those documents but all other discoverable

13  documents in his possession, custody, and control. McIlwain's conduct is contrary to

14  the administration of justice, and has prevented a timely and efficient resolution of this

15  case.

16  For these reasons, McIlwain failed to fulfill his duty to comply with the

17  California Rules of Professional Conduct 3.2, 4.1, and 8.4, and therefore his pro hac vice

18  admission should be revoked.

19  **B.      McIlwain failed to satisfy the ADR Local Rules.**

20  The Court ordered the parties to conduct a mediation by April 9, 2019. Dkt. 71.

21  With the parties' consent, a mediation was scheduled by mediator David Meadows for

22  May 20, 2019, at 10:00 A.M., at the office of Hagens Berman in Berkeley, California. The

23  ADR Local Rules require the parties to submit written mediation statements before the

24  mediation. ADR L.R. 6-7(a). ADR L.R. 6-7(c) sets forth the content that "must" be

25

26  [1] It does not matter that McIlwain is the sole shareholder of Plaintiff McIlwain, LLC, and representing his corporation *in propria persona*. The California Rules of Professional

27  Conduct apply to attorneys admitted pro hac vice at all times, regardless of their

28  relationship to the client. *Id.* at comment [1].

1    included in the mediation statement, including a discussion of the substance of the suit,

2    liability issues, and key evidence. The mediator also detailed several additional topics,

3    under ADR L.R. 6-7, he wanted the parties to address to help facilitate the mediation.

4    *See* Aragon Decl., at ¶ 66.

5           The Firm's mediation statement fully complied with Mr. Meadows' letter and

6    ADR L.R. 6-7. McIlwain, however, did not submit a mediation statement under ADR

7    L.R. 6-7. Instead, after receiving Defendant's statement, he belatedly sent a brief letter

8    attaching his summary judgment motion in lieu of a mediation statement. He did not

9    address the topics in ADR L.R. 6-7 or those set forth by the mediator. Nor did he ask the

10   mediator to be excluded from filing the mediation statement under Rule 6-7(c) or give

11   any reason why he did not comply with the ADR Local Rules or Mr. Meadows'

12   instructions. By not following the ADR Local Rules, McIlwain failed to fulfill his

13   obligations under Rule 11-4(a)(2) to comply the Local Rules of this Court and his own

14   sworn statement that he would comply with the ADR Local Rules.

15          The letter confirming the mediation also stated: "each party, trial attorney, and

16   insurance representative (if any) should attend, as well as anyone else whose approval

17   will be required." *See* Aragon Decl., at ¶ 66. ADR L.R. 6-10(a) requires personal

18   attendance by all named parties and their counsel absent "extraordinary or otherwise

19   unjustifiable hardship." If a party, as here, is a corporation, the party may be

20   represented by a person (other than outside counsel) who has final authority to settle

21   and who is knowledgeable about the facts of the case. ADR L.R. 6-10(a)(1). Each party

22   must also be accompanied at the mediation by the lawyer who will be primarily

23   responsible for handling the trial of the matter. ADR L.R. 6-10(b).

24          Despite these requirements, McIlwain and his co-counsel did not personally

25   attend the mediation, nor did a representative of the corporation attend the mediation.

26   Following the mediation, Hagens Berman sought an explanation as to why McIlwain

27   and his co-counsel, Mr. Schein, were unable to personally attend the mediation when

28   there was ample time to schedule a flight from Denver to Oakland, San Jose, or San

1   Francisco for a mediation that started at 10:00 A.M., and could have been postponed to

2   accommodate the delay. McIlwain refused to answer the question, only stating that his

3   flight to San Francisco was cancelled, and Southwest Airlines was unable to

4   accommodate him. McIlwain then promised to provide additional documentation

5   showing why he was unable to reschedule, but never provided the promised

6   documentation. Nor did he ever explain why Mr. Schein was unable to attend, other

7   than to say that he was not authorized to settle the case.

8            By not attending the mediation in person, or providing sufficient information to

9   show why it was an extraordinary or otherwise unjustifiable hardship to attend in

10  person or have his client's local counsel attend in person, McIlwain failed to follow the

11  ADR Local Rules—a condition of his pro hac vice admission. And by failing to fulfill his

12  promise to provide documentation to opposing counsel showing why he was unable to

13  reschedule his flight, Mr. McIlwain breached his duty of truthfulness and candor under

14  the Standards of Professional Conduct and the Local Rules. *See* L.R. 11-4 (requiring

15  attorneys admitted pro hac vice to practice with honesty, care, and decorum required

16  for the fair and efficient administration of justice); Rule 4.1 (prohibiting attorneys from

17  making false statements of material fact); Rule 8.4 (defining professional misconduct as

18  engaging in conduct involving dishonesty). Because McIlwain refuses to meet his pro

19  hac vice duty to abide by the local rules, his pro hac vice admission should be revoked.

20  Cf. *Rietveld v. Rosebud Storage Partners, L.P.*, 121 Cal. App. 4th 250, 255, 16 Cal. Rptr. 3d

21  791, 794 (Cal. Ct. App. 2004) (sanctioning attorney for violating local rules promulgated

22  under state statute).

23       C.      **McIlwain violated Rule 8.1 by falsely stating on his pro hac vice**
                 **application that he would comply with the Standards of Professional**
24               **Conduct.**

25           California Rule of Professional Conduct 8.1(a) prohibits attorneys from making

26  false statements of fact or law when applying for pro hac admission. *See* Cal. Rule of

27  Prof. Conduct 8.1 ("An applicant for admission to practice law shall not, in connection

28  with that person's own application for admission, make a statement of material fact that

                                                      16

1    the lawyer knows to be false, or make such a statement with reckless disregard as to its

2    truth or falsity.") Here, McIlwain's application for admission pro hac vice contained the

3    following declaration under penalty of perjury: "I agree to familiarize myself with, and

4    abide by, the Local Rules of this Court, especially the Standards of Professional Conduct

5    for attorneys and the Alternative Dispute Resolution Local Rules." Dkt. 74. This

6    statement was false.

7          Given his repeated violations of the Rules of Professional Conduct, Local Rules,

8    and ADR rules described above, there is no basis for McIlwain's statement that he

9    familiarized himself with the relevant rules. But even if he did familiarize himself with

10   the Rules, he did not follow them. In addition to violating the California Rules of

11   Professional Conduct by constantly making false statements to opposing counsel,

12   McIlwain consistently refuses to meet and confer in good faith as required by the Local

13   Rules 37-1 and filed motions that failed to comply with Local Rule 7. *See* Dkt. 75 (bizarre

14   letter to the Court seeking relief). He also failed to fulfill his obligations under the ADR

15   Local Rules, by not submitting a compliant mediation statement or attending the

16   mediation in person.

17         Because McIlwain submitted a declaration to this Court that is demonstrably

18   false, he violated Rule 8.1(a). McIlwain's pro hac vice admission should be revoked.

19   **IV.     Conclusion**

20         McIlwain's conduct in this case has been egregious. Defendant relied on

21   McIlwain's false statements throughout the litigation to his detriment, and should no

22   longer be required to do so. McIlwain does not deserve the privilege of pro hac vice

23   admission due to his inability to follow the California Rules of Professional Conduct

24   and the Local Rules of this Court. For these reasons, Hagens Berman respectfully

25   requests the Court revoke the admission and award the Firm fees and costs in bringing

26   this motion.

27

28

1    Dated: July 30, 2019                          Respectfully submitted,

2                                                  HAGENS BERMAN SOBOL SHAPIRO LLP

3

4                                                  By _____/s/ Leonard W. Aragon_____
                                                      LEONARD W. ARAGON
5                                                  Leonard W. Aragon (*pro hac vice*)
                                                   11 West Jefferson Street, Suite 1000
6                                                  Phoenix, Arizona 85003

7
                                                   Shana E. Scarlett (217895)
8                                                  715 Hearst Avenue, Suite 202
                                                   Berkeley, California 94710
9

10                                                 Attorneys for Defendant
                                                   Hagens Berman Sobol Shapiro LLP
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28