1

Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP

2

715 Hearst Avenue, Suite 202

3

Berkeley, California 94710
Telephone: (510) 725-3000

4

Facsimile: (510) 725-3001
shanas@hbsslaw.com

5

6

Leonard W. Aragon (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP

7

11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003

8

Telephone: (602) 840-5900
Facsimile: (602) 840-3012

9

leonard@hbsslaw.com

10

Attorneys for Defendant
Hagens Berman Sobol Shapiro LLP

11

12

13

14

**UNITED STATES DISTRICT COURT**

15

**NORTHERN DISTRICT OF CALIFORNIA**

16

MCILWAIN, LLC,

Case No.: 18-cv-03127-CW

17

Plaintiff,

18

v.

**DEFENDANT'S NOTICE OF MOTION
AND MOTION FOR SUMMARY
JUDGMENT**

19

STEVE W. BERMAN, et al.,

20

Defendants.

Date: January 21, 2020

21

Time: 2:30 p.m.
Courtroom: TBD

22

Judge: Honorable Claudia Wilken

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 21, 2020, at 2:30 p.m., or as soon thereafter as the matter may be heard in the above-entitled court, located at 1301 Clay Street, Oakland, California, 94612, Defendant Hagens Berman Sobol Shapiro LLP will and hereby does respectfully move this Court, under Rule 56 of the Federal Rules of Civil Procedures, for an order granting summary judgment in favor of Defendant. The motion should be granted because (1) the alleged contract to split fees is unenforceable because it violates the rules of professional conduct; (2) the alleged contract to split fees is unenforceable because there was a failure of consideration; (3) the alleged contract to split fees is unenforceable because a condition precedent to enforcing the agreement—consummation of the underlying class action settlement—never occurred; (4) if the agreement is an enforceable contract, Hagens Berman properly rescinded after learning it consented to the agreement based on unilateral mistake; (5) a breach of covenant of good faith and fair dealing cannot be based on an unenforceable contract or express breaches of an alleged contract; and (6) a breach of prospective economic advantage claim can only be asserted against third parties, not parties to the contract giving rise to the prospective economic advantage.

This Motion is supported by the following Memorandum of Points and Authorities and the concurrently filed Declarations of Robert B. Carey and Leonard W. Aragon.

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................................ 1

II.  BACKGROUND ........................................................................................................................ 2

   A.   Hagens Berman files a groundbreaking nationwide class action; McIlwain files a deficient statewide class and Hagens Berman strives to protect putative class members ................................. 2

   B.   The parties agree to resolve their cases, seek and obtain final approval of a global class-action settlement, and split fees awarded by the Court. ....................................................................... 5

   C.   McIlwain agrees to settle without reviewing the settlement with his client or obtaining his approval, and is fired after Hart reviews the settlement terms. ............................................................. 8

   D.   After termination, McIlwain fails to fulfill his obligations to the class to protect his ability to recover fees ......................................................................................................................................... 10

   E.   Hagens Berman rescinds the Fee-Split Agreement and is required to re-negotiate with Hart's new counsel regarding the settlement and division of fees. .................................................................. 11

   F.   After signing a new agreement with Hart, the parties settle the nationwide class with no assistance from Plaintiff. ....................................................................................................................... 12

   G.   This Court reduced McIlwain's fee application to an amount proportional to Plaintiff's efforts on the case. ................................................................................................................................. 14

III. ARGUMENT .............................................................................................................................. 15

   A.   The Fee-Split Agreement is unenforceable because it violates the Rules of Professional Conduct .............................................................................................................................................. 15

   B.   Even if the Fee-Split Agreement was not void, the agreement cannot be enforced because there was a failure of consideration. ...................................................................................................... 18

   C.   Even if there is no failure of consideration, the Fee-Split Agreement is still unenforceable because a condition precedent to the agreement did not occur. ........................................................... 19

   D.   Hagens Berman properly rescinded the Fee-Split Agreement when it learned that its consent to the agreement was induced by a unilateral mistake. ........................................................... 22

   E.   Hagens Berman is entitled to summary judgment on Plaintiff's covenant of good faith and fair dealing claim as a matter of law ................................................................................................... 23

   F.   Hagens Berman is entitled to judgment on McIlwain's interference with prospective economic advantage claim as a matter of law ................................................................................... 24

IV.  CONCLUSION ........................................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,
    7 Cal. 4th 503 ....................................................................................................... 26

*Barroso v. Ocwen Loan Servicing, LLC*,
    208 Cal. App. 4th 1001 (2012) ............................................................................. 21

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal, Inc.*,
    2 Cal.4th 342 (1992) ............................................................................................. 25

*Cazares v. Saenz*,
    208 Cal. App. 3d 279 (1989) ................................................................................ 20

*Chambers v. Kay*,
    29 Cal. 4th 142 (2002) .................................................................................... 16, 17

*Channel Lumber Co. v. Porter Simon*,
    78 Cal. App. 4th 1222 (2000) ............................................................................... 23

*Denver v. Roane*,
    99 U.S. 355 (1878) .......................................................................................... 19, 20

*Donovan v. RRL Corp.*,
    26 Cal. 4th 261 (2001) ......................................................................................... 23

*Erhart v. BofI Holding, Inc.*,
    269 F. Supp. 3d 1059 (S.D. Cal. 2017) ............................................................... 25

*Harm v. Frasher*,
    181 Cal. App. 2d 405 (Ct. App. 1960) ................................................................ 21

*Hart v. Electronic Arts, Inc.*,
    717 F.3d 141 (3d Cir. 2013) ................................................................................... 4

*Hart v. Electronic Arts, Inc.*,
    808 F. Supp. 2d 757 (D.N.J. 2011) ....................................................................... 3

*Hart v. Electronic Arts, Inc.*,
    Case No. 09-cv-05990 .................................................................................. *passim*

*Hart, et al. v. EA*,
    No. 2009L001094 ................................................................................................... 3

*Jacob v. Norris, McLaughlin & Marcus*,
    128 N.J.10 (1992) ................................................................................................ 16

*Jospeh Saveri Law Firm, Inc. v. Michael E. Criden, P.A.*,
    No. 14-cv-01740-EDL, 2015 WL 1029364 (N.D. Cal. March 9, 2015) ............................ 17

*Keller, et al. v. Electronic Arts, Inc., et al.*,
    Case No. 09-cv-01967 ......................................................................................... *passim*

*Mark v. Spencer*,
    166 Cal. App. 4th 219 (2008) ....................................................................................... 20

*Negrete v. Allianz Life Ins. Co. North America*,
    523 F.3d 1091 (9th Cir. 2008) ........................................................................................ 4

*Redbox Automated Retail, LLC v. Buena Vista Home Entm't, Inc.*,
    399 F. Supp. 3d 1018 (C.D. Cal. 2019) ...................................................................... 25

*Smith v. City & Cty. of San Francisco*,
    225 Cal. App. 3d 38 (Ct. App. 1990) .......................................................................... 25

*Symonds v. Sherman*,
    219 Cal. 249 (1933) ...................................................................................................... 21

*Tarzy v. Dwyer*,
    18 CIV. 1456 (JFK), 2019 WL 132280 (S.D.N.Y. Jan. 8, 2019) ................................ 17

*The Whitehead Law Firm, LLC, v. Stull, Stull & Brody*,
    No. 17-4704-SRC, 2019 WL 2055756 (D.N.J. March 5, 2019) .................................. 17

*Van Norden v. Metson*,
    75 Cal. App. 2d 595 (1946) .................................................................................... 22, 23

*Vill. Northridge Homeowners Assn. v. State Farm Fire & Cas. Co.*,
    50 Cal. 4th 913 (2010) ................................................................................................. 24

*Weiner & Mazzei, P.C. v. Sattiraju Law Firm, PC*,
    A-1079-14T3, 2016 WL 2993123 (N.J. Super. Ct. App. Div. May 25, 2016) .............. 18

*Western Grocer Co. v. New York Oversea Co.*,
    28 F.2d 518 (N.D. Cal. 1928) ...................................................................................... 20

*Woods v. Google, Inc.*,
    889 F. Supp. 2d 1182 (N.D. Cal. 2012) ...................................................................... 24

**Statutes**

California Civil Code § 1436 .................................................................................................. 20

California Civil Code § 1439 .................................................................................................. 20

California Civil Code § 1689 ............................................................................................ 19, 23

California Civil Code § 1550 .................................................................................................. 23

**Other Authorities**

First Amendment ................................................................................................................3

California Rule of Professional Conduct 2-200 .............................................9, 16, 17

Federal Rule of Civil Procedure 23.............................................................4, 12, 14

Federal Rule of Civil Procedure 24................................................................. 8, 15

Federal Rule of Civil Procedure 56................................................................1, 3, 16

New Jersey Rule of Professional Conduct 1.5 ................................................. *passim*

Restatement (Second) of Contracts § 153 (1981) .............................................. 23

**TABLE OF EXHIBITS**

**Exhibits to the Declaration of Robert B. Carey**

| | |
|---|---|
| Exhibit A | September 26, 2014 Term Sheet |
| Exhibit B | September 24, 2013 Fee-Split Agreement |

**Exhibits to the Declaration of Leonard W. Aragon**

| | |
|---|---|
| Exhibit A | Complaint filed in *Hart, et al. v. EA* (2009L001094) in the Superior Court of New Jersey |
| Exhibit B | Timothy McIlwain's April 1, 2019 Deposition Transcript Excerpts |
| Exhibit C | Court's Opinion filed at Dkt. 23 in *Hart, et al. v. EA* (No. 09-cv-05990-FLW-LHG (D.N.J.)) |
| Exhibit D | Second Amended Complaint filed at Dkt. 25 in *Hart* |
| Exhibit E | Plaintiff's Opposition to Defendant's Motion to Dismiss, *Hart* Dkt. 44 |
| Exhibit F | Plaintiff's Notice of Appeal filed at *Hart* Dkt. 56 |
| Exhibit G | *Hart* docket |
| Exhibit H | September 24, 2013 email from Eugene Egdorf to Steve Berman |
| Exhibit I | October 11, 2013 email from Robert Carey to Eugene Egdorf |
| Exhibit J | Ryan Hart's August 16, 2019 Deposition Transcript Excerpts |
| Exhibit K | Unsigned "Class Representative/Attorney Representation Agreement" |
| Exhibit L | Exhibit 3 to the transcript of Ryan Hart's August 16, 2019 deposition |
| Exhibit M | Declaration of Ryan Hart filed at Dkt. 82-1 in *Hart* |
| Exhibit N | "Duties of Class Representatives" |
| Exhibit O | September 20, 2013 email exchange between Timothy McIlwain and Ryan Hart |
| Exhibit P | September 27, 2013 email exchange between Timothy McIlwain and Ryan Hart |
| Exhibit Q | September 27, 2013 email exchange between Timothy McIlwain and Ryan Hart |
| Exhibit R | September 30, 2013 email from Ryan Hart to Timothy McIlwain |
| Exhibit S | November 7, 2013 "Stipulation and Agreement between Counsel" |

1   Exhibit T      Timothy McIlwain's August 15, 2019 Deposition Transcript Excerpts

2   Exhibit U      Amended Class Action Settlement Agreement and Release filed at Dkt. 1158-1 in

3                  *Keller, et al. v. EA, et al.* (No. 09-cv-1967-CW (N.D. Cal.))

4   Exhibit V      Robert Carey's April 3, 2019 Deposition Transcript Excerpts

5   Exhibit W      September 24, 2013 email from Randall Wulff

6   Exhibit X      December 15, 2105 Corrected Order for Attorneys' Fees, *Keller* Dkt. 1287

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.     INTRODUCTION

Defendant Hagens Berman Sobol Shapiro LLP ("Hagens Berman") respectfully moves for an order granting summary judgment under Rule 56 of the Federal Rules of Civil Procedure in favor of Hagens Berman on all counts alleged by Plaintiff McIlwain LLC ("McIlwain"). Plaintiff has three claims arising from an alleged agreement to resolve a class action and split fees: (1) breach of contract, (2) violation of the implied covenant of good faith and fair dealing, and (3) interference with prospective economic advantage. The claims should be dismissed for the following reasons:

**First**, the breach of contract claim should be dismissed because McIlwain was required by the rules of professional conduct to obtain informed consent from his client before entering into an agreement to share fees ("Fee-Split Agreement"). Because he did not comply with the rules, the fee-split agreement is unenforceable. **Second**, even if the contract is enforceable, there was a failure of consideration. McIlwain was fired immediately after entering into the Fee-Split Agreement, and did ***nothing*** to further the case after termination. Indeed, he harmed the class and breached the Fee-Split Agreement by entering into a subsequent agreement with his client's successor counsel that allowed them to pursue a separate fee award to the detriment of Hagens Berman.

**Third**, the contract is unenforceable because a condition precedent to enforcing the fee-split—consummation of the underlying settlement—never occurred. The Fee-Split Agreement and term sheet resolving the putative class action ("Term Sheet") were executed on the same day and for the same purpose—to globally resolve the case. Because there is no fee award without final settlement approval, the obligation to share fees was premised on fulfilling the obligations in the Term Sheet executed by counsel for the parties, including McIlwain. The settlement agreed to in the Term Sheet, however, was never consummated, and McIlwain failed to fulfill his obligations in the Term Sheet and in the Fee-Split Agreement. McIlwain's successor counsel negotiated a new settlement and fulfilled the obligations contemplated by the Term Sheet. Because a condition precedent to the fee-split never occurred, the agreement is unenforceable.

**Fourth**, Hagens Berman had the right to rescind the Fee-Split Agreement, and timely exercised that right, when it learned that it entered into the agreement based on a unilateral mistake. Hagens Berman did not know that McIlwain failed to obtain informed consent before entering into

1

the Fee-Split Agreement or Term Sheet, and would not be able to fulfill his obligations under either agreement. The Firm timely rescinded the agreement as permitted under California law once it learned of its mistake. **Fifth**, McIlwain's covenant of good faith and fair dealing claim should be dismissed because a covenant claim must be premised on an enforceable contract, and there is no enforceable contract here. Further, McIlwain has only alleged a breach of express provisions in the contract, not a breach of the covenant, and breach of an express provision cannot support a covenant claim. **Sixth**, McIlwain's breach of prospective economic advantage claim cannot survive because such claims can only be asserted against third parties, not parties to the contract giving rise to the prospective economic advantage. For these reasons, Hagens Berman is entitled to summary judgment on each claim as a matter of law.

## II.      BACKGROUND

**A.    Hagens Berman files a groundbreaking nationwide class action; McIlwain files a deficient statewide class and Hagens Berman strives to protect putative class members.**

On May 5, 2009, Hagens Berman filed the first nationwide class action alleging Electronic Arts ("EA") and the National Collegiate Athletic Association ("NCAA") used the names, images, and likenesses of college football and basketball players in videogames without their permission. The case, *Keller, et al. v. Electronic Arts, Inc., et al.*, Case No. 09-cv-01967 ("*Keller*"), was filed in the Northern District of California.[1] On June 15, 2009, McKenna McIlwain LLP[2] filed a facially deficient statewide class-action complaint in the Superior Court of New Jersey,[3] *Hart v. Electronic Arts, Inc.*, Case No. 09-cv-05990 ("*Hart*"). *Hart* alleged that EA used the names, images, and likenesses of former student-athletes Ryan Hart and Troy Taylor but did not contain class allegations, despite stating it was filed on behalf of "Plaintiffs" and "all others similarly situated."[4]

---

[1] *See* Decl. of Robert B. Carey Supp. Mot. Summ. J. ("Carey Decl.") ¶ 2; *Keller* Dkt. 1.

[2] McKenna McIlwain LLP was later replaced by Timothy J. McIlwain acting on behalf of McIlwain LLC. *See* Compl. ¶ 1.

[3] McKenna McIlwain LLP was replaced as counsel by Mr. McIlwain in July 2013. *See Hart* Dkts. 60-61.

[4] Decl. of Leonard W. Aragon Supp. Mot. Summ. J. ("Aragon Decl.") ¶ 2; Ex. A, Compl. (*Hart, et al. v. EA*, No. 2009L001094).

Mr. McIlwain allegedly drafted the complaint and "spearheaded" the litigation, even though he admits he is *not* a class-action attorney and *not* capable of litigating a class action on his own.[5]

EA removed *Hart* to federal court and the parties agreed to allow McIlwain to amend the complaint to address fundamental pleading deficiencies.[6] After amending the *Hart* complaint, the Honorable Freda L. Wolfson granted EA's motion to dismiss and dismissed all claims with prejudice except the right-of-publicity claims, which were dismissed without prejudice and Plaintiffs were again granted leave to amend.[7] Over a year after Hagens Berman filed its nationwide class action—Mr. McIlwain filed a second amended complaint that borrowed heavily from Hagens Berman's class allegations in *Keller*.[8] In response, EA filed a Motion to Dismiss or, in the Alternative, Summary Judgment.[9] McIlwain relied primarily on legal arguments made in *Keller* to support his response, but failed to file a motion under Rule 56(d) that would have allowed him to seek discovery before the court considered the summary judgment motion.[10] The court dismissed the complaint on summary judgment, finding EA's conduct was protected by the First Amendment.[11] The *Hart* plaintiffs appealed.[12]

After *Hart* was dismissed, the players' associations for the major professional leagues hired Michael Rubin of Altshuler Berzon Nussbaum & Rubin to file an amicus and assist McIlwain in litigating the appeal.[13] Because McIlwain was supplanted by competent counsel during the appeal, Hagens Berman did not seek to intervene but continued to monitor the case.[14] Mr. Rubin argued the appeal to the Third Circuit, and the appellate court, relied largely on this Court's ruling in *Keller* to

---

[5] *See, e.g.,* Aragon Decl. ¶ 3, Ex. B (4/1/19 McIlwain Dep. at 46:5-8, 111:2-112:2, 166:12-21).

[6] Aragon Decl. ¶ 4, Ex. C, Dkt. 23 (Opinion) at 2 (*Hart et al. v. EA*, No. 09-cv-05990-FLW-LHG (D.N.J.)).

[7] *Id.* ¶ 5, Ex. C at 3, 16, 21.

[8] *Id.* ¶ 6, Ex. D (*Hart* Dkt. 25 (Am. Compl.)).

[9] *Id.* ¶ 7, Ex. E (*Hart* Dkt. 44 (Opp'n Mot. to Dismiss)).

[10] *Id.* ¶ 8, Ex. E.

[11] *Hart v. Electronic Arts, Inc.*, 808 F. Supp. 2d 757 (D.N.J. 2011).

[12] Aragon Decl. ¶ 9, Ex. F (*Hart* Dkt. 56 (Notice of Appeal)).

[13] *Hart v. Electronic Arts, Inc.*, 717 F.3d 141 (3d Cir. 2013).

[14] Carey Decl. ¶ 3.

1    reverse and remand *Hart* to the trial court.[15] Mr. Rubin did not enter an appearance in the trial court,

2    and McIlwain took over the day-to-day litigation responsibilities for the case.[16]

3           Because Hagens Berman did not believe McIlwain could competently litigate his case,

4    Hagens Berman contacted Mr. McIlwain and offered to work with his firm in an effort to protect

5    the putative class and prevent a reverse auction.[17] Mr. McIlwain was unwilling to work with Hagens

6    Berman.[18] Instead, he contracted with the Lanier Law Firm ("Lanier") as co-counsel in *Hart*.[19] But

7    *Hart* was never substantively litigated.[20] The *Hart* plaintiffs' counsel never sought appointment as

8    interim lead counsel or to have Hart appointed as an interim class representative.[21] The *Hart*

9    plaintiffs never served or received discovery and there is no indication the court held a scheduling

10   conference.[22] Despite the addition of Lanier, Hagens Berman was still concerned *Hart's* counsel

11   would harm the putative class by reverse auctioning the claims.[23] To protect the claims and the

12   putative class, Hagens Berman filed *Alston v. Electronic Arts* in the District of New Jersey. *Alston* was a

13   putative nationwide class action alleging the same causes of action as *Hart*.[24] After filing *Alston*,

14   Hagens Berman prepared a motion to consolidate the two New Jersey cases and appoint Hagens

15   Berman as interim class counsel when EA asked to mediate.[25]

16

17

18

---

19   [15] *Hart*, 717 F.3d at 170.

20   [16] Aragon Decl. ¶ 13, Ex. G.

     [17] Carey Decl. ¶ 4. A reverse auction occurs when the defendant in a series of class actions picks
21   the most ineffectual class lawyers to negotiate a settlement with the hope that the court will approve
     the settlement thereby releasing all other claims. *See Negrete v. Allianz Life Ins. Co. North America*, 523
22   F.3d 1091, 1099 (9th Cir. 2008).

23   [18] *Id.* ¶ 5.

     [19] Dkt. 84 (Pl.'s Statement of Facts Supp. Summ. J. ¶ 4 ("PSOF")).
24
     [20] *See generally* Aragon Decl. ¶ 11, Ex. G (*Hart* case docket).
25
     [21] *Id.*; Fed. R. Civ. P. 23(g)(3) and (4).
26
     [22] Aragon Decl. ¶ 12, Ex. B at 165:24-166:6; Ex. G.
27   [23] Carey Decl. ¶ 6.

     [24] *Id.*
28
     [25] *Id.* ¶ 11; Dkt. 84 (PSOF at 4).

**B.      The parties agree to resolve their cases, seek and obtain final approval of a global class-action settlement, and split fees awarded by the Court.**

There were four pending cases against EA, the antitrust case referred to as *O'Bannon*, and three right-of-publicity cases: *Keller* (primarily alleging violations of California's right-of-publicity statute) and *Hart* and *Alston* (alleging violations of New Jersey common law right-of-publicity).[26] On January 15, 2010, this Court consolidated *O'Bannon* and *Keller* into an action captioned *In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, Case No. 09-cv-01967, appointing Hagens Berman as co-lead class counsel along with Hausfeld LLP ("Hausfeld"), with Hagens Berman taking primary responsibility for the right-of-publicity claims and Hausfeld for the antitrust claims.[27] Hagens Berman also served as putative class counsel for *Alston*. McIlwain and Lanier were putative class counsel for *Hart*.[28]

Plaintiffs' counsel scheduled a mediation with counsel for EA on September 10, 2013, before mediator Randall Wulff.[29] On September 4, 2013, Mr. McIlwain notified Hart of the upcoming mediation and requested permission, for the first time, to share attorneys' fees with Lanier.[30] The letter did not request Hart's permission to split fees with any other attorney, nor did it seek Hart's approval to settle without further authorization.[31]

Counsel for the parties attended the scheduled mediation on September 13, 2012, but could not reach an agreement that day.[32] Because it was clear at the mediation that the antitrust plaintiffs had divergent interests and given there were overlapping class members between *Hart*, *Alston*, and *Keller*, the right-of-publicity attorneys began working together and tentatively agreed on how to split fees, if any, awarded by the Court.[33] With Mr. Wulff's

---

[26] Dkt. 1 (Compl., Ex. B).

[27] *Keller* Dkts. 144, 146.

[28] Dkt. 84 (PSOF ¶ 6).

[29] *Id.* ¶ 5.

[30] Dkt. 118 (McIlwain Decl., Ex. S).

[31] *Id.*

[32] Carey Decl. ¶ 12.

[33] *Id.* ¶ 12.

assistance, the parties continued negotiating the settlement by email and phone until September 24, 2013, when they reached an agreement in principle to resolve all claims (the "Term Sheet").[34] Later that day, Lanier circulated the previously agreed-upon proposal for the attorneys representing the right-of-publicity plaintiffs[35] to split fees.[36] The proposed agreement (the "Fee-Split Agreement") states, in relevant part:

> I am writing to confirm what I understand our agreement to be regarding the current proposal from Randy Wulffe [sic] to settle the EA litigation (Hart, Keller, and O'Bannon) [sic]. Please confirm our agreement and advise of any changes.
>
> 1. We agree to work together in the submission of applications for fees and expenses;
>
> 2. We agree to support each other concerning the substance and merits of our fee submissions;
>
> 3. We agree to support each other and collectively, as appropriate, contest any applications for fees and expenses from other firms;
>
> 4. For any fee award or agreement to our firms (Hagens Berman, The Lanier Law Firm, and Tim McIlwain), we agree to consider those as a joint award which will be pooled together for our collective group;
>
> 5. From that joint award to our collective group, irrespective of the methodology, substance and distribution ordered by the Court, we agree that 60% of such fees will be paid to Hagens Berman, and the remaining 40% to Lanier and McIlwain....[37]

The purpose of the Fee-Split Agreement and Term Sheet, executed on the same day and for the same purpose (to resolve the EA litigation globally) is straightforward. The firms agreed to combine their cases, jointly obtain final approval of the class-action settlement, support each other's fee and cost applications, and oppose all other applications for fees and costs.[38] Should the Court award fees, the parties agreed to split all fees awarded to the right-of-publicity plaintiffs, with 60% to

---

[34] *Id.* ¶ 13, Ex. A (Term Sheet).

[35] Counsel for the right-of-publicity plaintiffs agreed to the terms of the proposed fee-split on September 10, 2013, but did not finalize the agreement until the terms of settlement with EA were agreed upon on September 23, 2013. Aragon Decl. ¶ 14, Ex. V (4/3/19 Rob Carey Dep. at 24:8-25); Carey Decl. ¶ 14, Ex. B (Fee-Split Agreement).

[36] Carey Decl. ¶ 14, Ex. B.

[37] *Id.*

[38] *Id.* ¶ 15.

Hagens Berman and 40% to Lanier and McIlwain.[39] The Fee-Split Agreement also incorporates the proposed settlement circulated by the mediator—"I am writing to confirm what I understand our agreement to be regarding the current proposal from Randy Wulff to settle the EA litigation (*Hart*, *Keller*, and *O'Bannon)*."[40] The "current proposal" to "settle" the EA litigation was the term sheet[41] circulated by mediator Wulff and accepted by all parties on September 24, 2015.[42]

After Hagens Berman reviewed the Term Sheet with putative class representative Keller and ostensibly after all other attorneys reviewed the Term Sheet with their respective clients, counsel for *Keller*, *Alston*, and *Hart* signed the Term Sheet memorializing the parties' agreement to resolve their claims against EA on September 26, 2013.[43] The Term Sheet required the negotiation, drafting, and approval of a long-form settlement agreement.[44] It also required the "parties" to obtain final approval of the class-action settlement.[45] The only "parties" to the Term Sheet were **counsel** for *Keller*, *Alston, Hart,* and *O'Bannon,* the putative class representatives did not sign the agreement.[46]

In short, the Fee-Split Agreement required counsel to (1) consolidate their cases,[47] (2) settle their respective putative class claims, (3) negotiate and draft a long-form settlement agreement, and (4) complete the settlement approval process.[48] The Fee-Split Agreement also contemplated that

---

[39] *Id.*, Ex. B.

[40] *Id.*

[41] *Id.*

[42] Aragon Decl. ¶ 16, Ex. W (9/24/13 email from Randall Wulff).

[43] Carey Decl. ¶ 17.

[44] *Id.* ¶ 18, Ex. A ¶ 3 (requiring specific terms in the long-form settlement agreement).

[45] *Id.* ¶ 19, Ex. A ¶ 4 (requiring parties to obtain settlement approval and obtain judgment as defined by the agreement).

[46] *Id.* ¶ 20, Ex. A. The putative class actions were a defined term and described in the Term Sheet as the "Actions." When the putative class representatives were discussed, they were called "Plaintiff(s)." The attorneys for the respective classes are the parties to the Term Sheet and the only signatories. *Id.* The putative class representative did not sign the Term Sheet. *Id.*

[47] *See* Dkt. 70 ((Joint Case Management Statement, p. 1 (PSOF) "This case is a breach of contract case wherein there was an agreement among the parties to consolidate the cases.")); Carey Decl. ¶ 21, Exs. A, B.

[48] Aragon Decl. ¶ 17, Ex. I (10/11/13 email from Robert Carey to Eugene Egdorf); *Keller* Dkt. 1193-10 (Decl. of Timothy J McIlwain Supp. Mot. Attys' Fees and Costs and to Intervene Pursuant to Fed. R. Civ. P. 24 ¶ 45 (acknowledging that the Term Sheet was a settlement in principle only,

1  McIlwain, Hagens Berman, and Lanier would execute the proposed settlement and obtain final

2  approval together, as contemplated by the Term Sheet.[49] Lanier's participation was required under

3  the Fee-Split Agreement.[50] The Firm would not have entered into the Fee-Split Agreement with

4  McIlwain only.[51] McIlwain admits he offers nothing to class-action litigation.[52]

**C.   McIlwain agrees to settle without reviewing the settlement with his client or obtaining his approval, and is fired after Hart reviews the settlement terms.**

7          McIlwain does not have a signed retainer agreement with Hart, and never explained Hart's

8  role as a class representative when he filed the class action.[53] McIlwain produced an unsigned

9  retainer that gives Hart the "right" to "approve, oppose, or comment upon any proposed settlement

10  of all or part of the class action… ."[54] McIlwain also promised to keep Hart informed during the

11  mediation and expressly acknowledged that it was important for him to review the settlement

12  terms.[55] Despite these promises, McIlwain never offered Hart the right to approve, oppose, or

13  comment on the Term Sheet, and Hart never approved the Term Sheet or the proposed

14  settlement.[56] Hart authorized McIlwain to participate in the mediation, but never gave McIlwain

15  permission to settle the class claims (Hart was the only putative class representative) or his individual

16  claims.[57] Hart also offered to attend the mediation in person and contacted McIlwain several times

---

Hart's new counsel was required to negotiate, draft, and execute the settlement, and Hart's new
counsel had to handle the settlement approval process)).

[49] Carey Decl. ¶ 22, Exs. A, B.

[50] *Id.* ¶ 23.

[51] *Id.* ¶ 24.

[52] *See e.g.,* Aragon Decl. ¶ 18, Ex. B at 46:5-8, 111:2-112:2, 166:12-21.

[53] *See* Dkt. 84 (McIlwain Decl., Ex. R (Unsigned "Class Representative/Attorney Representation Agreement")); Aragon Decl. ¶ 19, Ex. J (8/16/19 Ryan Hart Dep. at 15:12-17:7), Ex. K.

[54] Aragon Decl. ¶ 20, Ex. K (unsigned "Class Representative/Attorney Representation Agreement").

[55] *Id.* ¶ 21, Ex. L at 2 (9/4/13 fax from Timothy McIlwain to Eugene Egdorf).

[56] *Id.* ¶ 22, Ex. J at 26:16-25, Ex. M (Hart Decl. ¶¶ 5-8).

[57] Aragon Decl. ¶ 24, Ex. M, Ex. N ("Duties of Class Representatives") (nothing conferring on McIlwain authority to settle claims).

1    asking for updates, but was ignored. The first time Hart learned of the settlement was **after** it was

2    signed by McIlwain and the other attorneys.[58]

3          Nor did McIlwain receive approval from Hart to enter into the Fee-Split Agreement with

4    Hagens Berman.[59] The Fee-Split Agreement was never presented to Hart, even though New Jersey

5    attorneys are prohibited from entering into fee-split agreements without client approval and

6    McIlwain expressly acknowledged and followed this rule when he agreed to split fees with Lanier.[60]

7    Hagens Berman consented to the agreements with the (mistaken) understanding that Hart, the only

8    putative class representative for the *Hart* action, consented to settle the case and allow the right-of-

9    publicity attorneys to split fees.[61]

10         Hart first learned of the proposed settlement when he read a news article discussing the

11   terms.[62] After reading the article, he asked for a conference call with his attorneys to discuss what he

12   read.[63] After reviewing the settlement terms and understanding the money he was due as the class

13   representative, Hart said he was "sick to his stomach" and cried.[64] Hart was ill because McIlwain had

14   told him from the beginning that he could become a "very wealthy man" man if the case was

15   resolved favorably.[65] McIlwain acknowledged his misrepresentations about the ability of class

16   representatives to recover in a class action by saying, "I feel sick about this too."[66]

17         On September 30, 2013, Hart instructed McIlwain and Lanier to cease representing him:

18   "Please take no further action on this matter until you receive further written instruction on my

19

20   _____

     [58] *Id.* ¶ 23, Ex. M.

21   [59] *Id.* ¶ 25, Ex. M ¶ 7 (Hart did not receive any communications from McIlwain from the period
22   of September 11, 2013 to September 26, 2013; the Fee-Split Agreement was entered on September
     23, 2013.).

23   [60] N.J. RPC 1.5; CA RPC 2-220.

24   [61] Carey Decl. ¶ 25.

     [62] Aragon Decl. ¶ 26, Ex. J at 25:21-25, 26:4-15, Ex. O (9/20/13 email exchange between Hart
25   and McIlwain).

26   [63] *Id.* ¶ 27, Ex. J at 25:20-25, Ex. P (9/27/13 email exchange between Hart and McIlwain).

     [64] *Id.* ¶ 28, Ex. J at 25:2-19.
27
     [65] *Id.* at 10:3-22, 25:2-19.

28   [66] *Id.* ¶ 29, Ex. Q (9/27/13 email exchange between Hart and McIlwain).

behalf."[67] He also asked them to direct all contact through his father-in-law, Bob Mulcahy.[68] Hart sent this request because he believed the attorney-client relationship with McIlwain was over and was so frustrated with McIlwain and his co-counsel that he thought it was best not to talk to them directly.[69] On October 2, 2013, Mr. Mulcahy emailed Mr. McIlwain and asked him to send "all documents that have [Hart]'s signature by overnight or by hand delivery" and to take no further action on the case.[70]

Hart exercised his right to replace McIlwain as counsel by October 2, 2013.[71] Notably, the unsigned retainer gave Hart the "right" to "substitute attorneys at any time…."[72] Keith McKenna, Hart's former counsel, rejoined the case, entering a notice of appearance on October 10, 2013.[73] On October 16, 2013, Lanier withdrew from the case,[74] and McIlwain withdrew shortly thereafter on November 11, 2013.[75] Hart did not authorize McIlwain or Lanier to work on his case after they were terminated, and did not ask McIlwain or Lanier to assist with litigating the case after termination.[76] McIlwain did not bill time to the file in support of the settlement, Mr. Hart, or the putative New Jersey Right-of-Publicity Class after September 30, 2013.[77]

**D.  After termination, McIlwain fails to fulfill his obligations to the class to protect his ability to recover fees.**

Before withdrawing as counsel of record, McIlwain moved to replace Hart with a new class representative, but withdrew the motion to protect his ability to pursue fees.[78] McIlwain alleges that

---

[67] *Id.* ¶ 30, Ex. R (9/30/13 email from Hart to McIlwain).

[68] *Id.*

[69] *Id.* ¶ 31, Ex. J at 34:5-22, 79:24-80:3, 123:8-19.

[70] *Id.* ¶ 32, Ex. R.

[71] *Id.* ¶ 33, Ex. J at 20:12-16, Ex. K, Ex. M at ¶ 15.

[72] *Id.* ¶ 34, Ex. K.

[73] *Id.* ¶ 35, Ex. G (*Hart* Dkt. 77).

[74] *Id.* Ex. G (*Hart* Dkt. 79); Dkt. 112.

[75] *Id.* ¶ 35, Ex. G (*Hart* Dkt. 98).

[76] *Id.* ¶ 36, Ex. J at 29:14-16, Ex. M ¶ 13.

[77] *Keller* Dkt. 1193-11, Ex. A at p. 65 (McIlwain fee details).

[78] Aragon Decl. ¶ 37, Ex. G (*Hart* Dkts. 97, 98); Ex. S (11/7/13 Stipulation and Agreement Between Counsel).

Hart appointed his father-in-law as the "client" and that Mr. Mulcahy, with Hart's consent,[79] attempted to extort $2.5 million from McIlwain to move forward with the settlement.[80] Instead of reporting this alleged egregious behavior, McIlwain agreed not to interfere with the transition of the file and withdraw its motion if Hart's new counsel agreed to let McIlwain pursue its claim for fees and costs.[81] Neither Hart nor Hagens Berman knew of the agreement until it was disclosed in this litigation.[82]

McIlwain never informed this Court that the class representative for the New Jersey Right-of-Publicity plaintiffs allegedly extorted the class or that it contracted with Hart's new counsel to hide the extortion claim and allow McIlwain to pursue fees, despite Rule 23 (e)(3)'s requirement to disclose all agreements related to a class settlement.[83] McIlwain also failed to disclose to this Court that he believed Mr. Hart was an inadequate class representative under Rule 23(a)(4), even though Hart's interests, taking McIlwain's allegations as true, conflicted with those of the putative class.[84] McIlwain's only concern was his application for fees and costs.[85] After being fired and entering into the covert agreement, McIlwain transitioned the file to Hart's new counsel but did nothing (and was not authorized to do anything) to substantively advance the settlement, obtain final approval, or otherwise further the case.[86]

**E.     Hagens Berman rescinds the Fee-Split Agreement and is required to re-negotiate with Hart's new counsel regarding the settlement and division of fees.**

On October 10, 2013, Hagens Berman emailed McIlwain and Lanier notifying them that the Fee-Split Agreement would be repudiated if McIlwain and his co-counsel no longer represented

---

[79] Mr. Hart denies knowledge of an attempt to extort Plaintiff. Aragon Decl. ¶ 38, Ex. J at 74:19-75:8, 78:22-79:8.

[80] *Id.*, Ex. T (8/15/19 McIlwain Dep. at 48:2-25, 75:15-81:13, 85:12-22).

[81] *Id.* ¶ 39, Ex. S. Notably, the agreements are signed by attorneys and not as representative of their respective law firms. Ex. T at 75:15-81:13, 85:12-22.

[82] *Id.* ¶ 40, Ex. J at 89:24-91:20; Carey Decl. ¶ 26.

[83] Carey Decl. ¶ 27; Aragon Decl. ¶ 41, Ex. T at 80:24-84:18.

[84] *Id.* ¶ 28; Aragon Decl. ¶ 42, Ex. T at 73:22-74:18.

[85] Aragon Decl. ¶ 43, Ex. T at 84:5-85:11.

[86] Carey Decl. ¶ 29; Aragon Decl. ¶ 44, Ex. T at 29:14-16.

1   Hart or a putative class.[87] Once Hart retained new counsel and it was clear McIlwain and Lanier no

2   longer represented Hart or a putative class, Hagens Berman rescinded the Fee-Split Agreement.[88]

3   The Firm could no longer share information regarding the settlement or the cases pending in

4   California and New Jersey with McIlwain or his co-counsel because they no longer represented Hart

5   or any other class representative with a case against EA.[89] Further, Hart never agreed to be

6   represented by, or even to work with, Hagens Berman,[90] and there was no retainer agreement

7   between McIlwain and Hart allowing for Hagens Berman to act as co-counsel and share fees.[91]

8           After McIlwain was fired, Hagens Berman had to start from square one with counsel

9   unfamiliar with the case, and was looking to improve the settlement terms for its client and the

10  putative class.[92] Hagens Berman had no choice but to work with Hart's new counsel to settle the

11  case.[93] Initially, the negotiations with Hart's new attorneys were amicable, but grew increasingly

12  adversarial.[94] Hart would not confirm the settlement, and his new attorneys were demanding an

13  agreement to split fees to resolve the cases globally.[95] The parties negotiated for months, to no

14  avail.[96] Eventually, the parties agreed to mediate their ongoing dispute with Mr. Wulff, and

15  eventually agreed to resolve the case jointly and split fees to resolve the *Hart*, *Keller*, and *Alston*

16  matters jointly.[97]

17  **F.      After signing a new agreement with Hart, the parties settle the nationwide class with
            no assistance from Plaintiff.**

18
19          Counsel for Keller, Hart, and Alston signed a long-form agreement with EA on July 23,

20  _____

21  [87] Aragon Decl. ¶ 45, Ex. I.

    [88] Carey Decl. ¶ 30.

22  [89] *Id.* ¶ 31; Aragon Decl. ¶ 46, Ex. I.

23  [90] Aragon Decl. ¶ 47, Ex. J at 118:13-25.

    [91] *Id.*, Ex. K, Ex. T at 104:9-14.

24  [92] Carey Decl. ¶ 32.

25  [93] *Id.* ¶ 33; Aragon Decl. ¶ 48, Ex. J at 30:3-31:17.

26  [94] Carey Decl. ¶ 34.

    [95] *Id.* ¶ 35; Aragon Decl. ¶ 49, Ex. J at 30:3-24.

27  [96] Carey Decl. ¶ 36.

28  [97] *Id.* ¶ 37.

1   2014.[98] The allocation of monies to the various classes in the long-form agreement differed from the

2   allocation in the Term Sheet.[99] Additionally, this was the only settlement agreement ever submitted

3   to (and approved by) this Court.[100] McIlwain did not negotiate, create, or sign the long-form

4   agreement.[101] Nor did McIlwain assist in obtaining preliminary or final approval, or obtain a

5   judgment releasing EA from claims, as required by the Term Sheet.[102] On August 18, 2015, this

6   Court signed the Order Granting Final Approval of Class Action Settlement and Final Judgment,

7   resolving all claims by the Class Plaintiffs in *O'Bannon*, *Keller*, *Hart*, and *Alston* against EA.[103] The

8   Court certified three settlement subclasses, the Antitrust Class, the *Hart/Alston* Right-of-Publicity

9   Class, and the *Keller* Right-of-Publicity Class.[104] McIlwain represented none of the certified classes.[105]

10          The Court also named 26 former players as class representatives, including Ryan Hart and

11   Shawne Alston as class representatives for the "*Hart/Alston* Right-of-Publicity Class."[106] McIlwain

12   never represented Alston, and was terminated as counsel of record by Hart approximately two years

13   before he was appointed a class representative.[107] The Court named four firms as class counsel,

14   including Hagens Berman and Hart's new counsel. McIlwain was never appointed class counsel.[108]

15          The Court approved the settlement agreement under Rule 23 of the Federal Rules of Civil

16   Procedure, and instructed counsel to consummate the agreement pursuant to its terms.[109] McIlwain

17   did not participate in the negotiation of the settlement and is not a signatory to the settlement.[110]

18

---

19   [98] Aragon Decl. ¶ 50, Ex. U.

20   [99] Carey Decl. ¶¶ 38, 47.

     [100] Carey Decl. ¶ 39.

21   [101] *Id.* ¶ 40; Aragon Decl. ¶ 50, Ex. U

22   [102] Carey Decl. ¶ 41; Aragon Decl. ¶ 51, Ex. A.

23   [103] *Keller* Dkt. 1243.

     [104] *Id.* at 2.

24   [105] Carey Decl. ¶ 42; *Keller* Dkt. 1287.

25   [106] Carey Decl. ¶ 43; *Keller* Dkt. 1287.

26   [107] *Id.* ¶ 44; Aragon Decl. ¶ 52, Ex. M ¶ 15.

     [108] *Keller* Dkt. 1243 at 4 ¶ 6.

27   [109] *Id.* at 5 ¶ 12.

28   [110] Carey Decl. ¶ 45.

13

1  Hart's new counsel signed the agreement and helped draft the settlement.[111] The terms of the final

2  settlement agreement differ from the Term Sheet regarding the allocation of monies to each

3  respective class.[112] The Court approved the allocation in the settlement agreement negotiated by

4  Hart's new counsel and Hagens Berman.[113] McIlwain did not participate in negotiations regarding

5  the allocation of monies to class members ultimately approved by the Court.[114]

6          After termination, McIlwain did nothing over the next two years to assist the other attorneys

7  to the Term Sheet in consummating the settlement.[115] Nor did McIlwain affirmatively support

8  Hagens Berman's fee and cost request.[116] McIlwain signed the Term Sheet without his client's

9  permission, was fired, and then substantively disappeared from the litigation except to make a fee

10  application.[117] Hagens Berman had to incur substantially more effort to resolve the class cases

11  because of the failure of McIlwain to comply with the obligations under the agreement. Eventually,

12  the fee application was approved, in part, and McIlwain was paid any and all monies due to him for

13  his work on the case.

14  **G.      This Court reduced McIlwain's fee application to an amount proportional to
             Plaintiff's efforts on the case.**

15

16          McIlwain submitted a fee application to this Court claiming a lodestar of $2,070,175.[118] The

17  Court reduced his hourly rate and then reduced the time he billed by 70% because it was "replete

18  with entries that are not reasonably related to the litigation or settlement of the case and because

19  the Court questions the reliability of the records…"[119] After the Court's lodestar adjustment,

20  ────────────────────

21    [111] *Id.* ¶ 46.

      [112] *Id.* ¶ 47.

22    [113] *Keller* Dkt. 1243 at 7 ¶ 18.

23    [114] Carey Decl. ¶ 48; *Keller* Dkt. 1193 (Timothy J. McIlwain's Notice of Motion and Motion for
      Attorneys' Fees and Costs and Conditionally to Intervene Pursuant to Federal Rule of Civil

24    Procedure 24) (showing no time for consummating the settlement).

25    [115] Carey Decl. ¶ 49.

      [116] *Id.* ¶ 50.

26    [117] *Id.* ¶ 51.

27    [118] Aragon Decl. ¶ 53, Ex. X (December 15, 2015 Order for Attorneys' Fees [*Keller* Dkt. 1287],
      also attached as Compl., Ex. B).

28    [119] *Id.*, Ex. X at 32-37.

McIlwain was awarded $405,000 in attorney's fees, representing compensation for the work he performed.[120] In contrast, Hagens Berman submitted a lodestar of $6,771,390.75, none of which was reduced or adjusted, and Hart's successor counsel submitted a lodestar of $883,177.[121] Successor counsel's lodestar was ultimately reduced to $496,145.50.[122] McIlwain's lodestar was approximately 5.5% of the combined lodestar for the attorneys who consummated the settlement on behalf of the right-of-publicity plaintiffs.[123]

### III.   ARGUMENT

**A.   The Fee-Split Agreement is unenforceable because it violates the Rules of Professional Conduct.**

A contract that violates the rules of professional conduct is void and unenforceable because it violates public policy. *Jacob v. Norris, McLaughlin & Marcus*, 128 N.J.10, 17, (1992) ("Contracts that violate the [New Jersey Rules of Professional Conduct] violate public policy, and the courts must deem them unenforceable."); *accord Chambers v. Kay*, 29 Cal. 4th 142, 162 (2002) (recognizing "it would be absurd for this or any other court to aid [plaintiff] in accomplishing a fee division that would violate the [California Rules of Professional Conduct's] explicit requirement of written client consent"). Under New Jersey's Rules of Professional Conduct, an attorney cannot agree to split fees with attorneys from another firm unless the following criteria are satisfied: (1)the division is in proportion to the services performed by each lawyer, or, by written agreement with the client, each lawyer assumes joint responsibility for the representation; (2) the client is notified of the fee division; (3) the client consents to the participation of all the lawyers involved; and (4) the total fee is reasonable. N.J. R. Prof. Conduct 1.5; Cal. R. Prof. Conduct 2-200.[124] Here, McIlwain—a New Jersey law firm representing a New Jersey plaintiff—did not obtain his client's consent to enter into

---

[120] *Id.*

[121] *Id.*, Ex. X at 13, 26.

[122] *Id.*, Ex. X at 31.

[123] The standard for summary judgment is well known to the parties and Court. *See, e.g.*, Fed. R. Civ. P. 56(a).

[124] The California Rules of Professional Conduct were amended on November 1, 2018, but the "1992" rules apply to the action giving rise to this case and the amended rule is substantively analogous to the previous rule. *See* Cal. R. Prof. Conduct 2-200 (requiring consent to share fees).

1    the Fee-Split Agreement with Hagens Berman.[125] Hart testified that he never agreed to be

2    represented by, or work with, Hagens Berman, nor did he consent to allow McIlwain to share fees

3    with Hagens Berman.[126] There is no evidence McIlwain ever presented the Fee-Split Agreement to

4    Hart, let alone obtained his consent. Hart terminated McIlwain as counsel after learning he executed

5    the Term Sheet without his consent, and by extension voided any co-counsel/fee-sharing agreement

6    entered into by McIlwain and Hagens Berman. Because Hart never consented to the Fee-Split

7    Agreement, it is unenforceable. *The Whitehead Law Firm, LLC, v. Stull, Stull & Brody*, No. 17-4704-

8    SRC, 2019 WL 2055756, *8 (D.N.J. March 5, 2019) (prohibiting enforcement of fee-split agreement

9    in class-action litigation because attorney did not obtain consent from his client as required by Rule

10   1.5); *Tarzy v. Dwyer*, 18 CIV. 1456 (JFK), 2019 WL 132280, at *8 (S.D.N.Y. Jan. 8, 2019) (attorney

11   cannot enforce a fee-sharing agreement where attorney failed to comply with the rules of

12   professional conduct governing fee-sharing agreements.).

13       The result is the same under California law. The New Jersey rule is substantively identical to

14   the California rule: "A member shall not divide a fee for legal services with a lawyer who is not a

15   partner of, associate of, or shareholder with the member unless: (1) The client has consented in

16   writing thereto after a full disclosure has been made in writing that a division of fees will be made

17   and the terms of such division…." *Chambers*, 29 Cal. 4th at 147. Nor does it matter that the

18   proposed Fee-Split Agreement arose in a class-action context. *See Jospeh Saveri Law Firm, Inc. v.*

19   *Michael E. Criden, P.A.*, No. 14-cv-01740-EDL, 2015 WL 1029364, *6 (N.D. Cal. March 9, 2015)

20   (applying this rule in class action and recognizing "unbroken line of cases" that "uniformly recognize

21   that an attorney cannot enforce a fee-sharing agreement if that attorney could have obtained written

22   client consent as required by rule 2-200, but failed to do so.") (citing *Barnes, Crosby, Fitzgerald &*

23   *Zeman, LLP v. Ringler*, 212 Cal. App. 4th 172 (2012)). Here, McIlwain could have obtained consent

24

25

26   [125] Aragon Decl. ¶ 54, Ex. M ¶ 7 (Hart did not receive any communications from McIlwain from
      the period of September 11, 2013 to September 26, 2013; the Fee-Split Agreement was entered on
27   September 23, 2013.).

28   [126]*Id.* ¶ 55, Ex. J at 98:6-8, 118:8-119:15.

1   and knew he was required to obtain consent, but did not even attempt to do so. Under these

2   undisputed facts, he is prohibited from enforcing the Fee-Split Agreement as a matter of law. *Id.*

3          McIlwain also violated New Jersey Rule of Professional Conduct 1.5(e)(1), requiring a fee-

4   split between attorneys to be "in proportion to the services performed by each lawyer, or, by written

5   agreement with the client, each lawyer assumes joint responsibility for the representation." Because

6   Hart never consented to allow Hagens Berman to assume joint responsibility for the representation,

7   McIlwain must show the fee-split is in proportion to the services performed by each lawyer.

8   McIlwain claims he is entitled to share 40% of the fee even though he was terminated almost

9   immediately after the Term Sheet was signed and did not comply with his obligations under the

10  parties' agreement. He did little to further the case. The appellate victory was the product of other

11  counsel, and most of his billing was related to amending his complaint and unsuccessfully defending

12  against motions to dismiss and summary judgment.

13         McIlwain's fee submission claimed a lodestar of $2,070,175,[127] but this Court reduced his

14  inflated hourly rate and then reduced the time he billed by 70% because it was "replete with entries

15  that are not reasonably related to the litigation or settlement of the case and because the Court

16  questions the reliability of the records…"[128] After the Court's lodestar adjustment, McIlwain was

17  awarded $405,000 in attorney's fees, representing compensation for the work he performed. *Id.* In

18  contrast, Hagens Berman submitted a lodestar of $6,771,390.75, none of which was reduced or

19  adjusted, and Hart's successor counsel submitted a lodestar of $883,177, which was reduced to

20  $496,145.50.[129] McIlwain's lodestar was approximately 5.5% of the combined lodestar for the

21  attorneys who consummated the settlement on behalf of the right-of-publicity plaintiffs.

22         An agreement to take a 40% fee for doing 5% of the work is not proportional and therefore

23  prohibited by the New Jersey Rules of Professional Conduct. *See Weiner & Mazzei, P.C. v. Sattiraju*

24  *Law Firm, PC*, A-1079-14T3, 2016 WL 2993123, at *2 (N.J. Super. Ct. App. Div. May 25, 2016)

25  (citing *Goldberger, Seligsohn & Shinrod, P.A. v. Baumgarten*, 378 N.J. Super. 244, 252 (App. Div. 2005)

---

26

27       [127] Aragon Decl. ¶ 53, Ex. X.

         [128] *Id.*, Ex. X at 32-37.

28       [129] *Id.*, Ex. X at 13, 26, 31

1    (holding fee-sharing agreement between attorneys that does not satisfy the requirements of RPC

2    1.5(e) is not enforceable)).

3         Hart was never presented with, and therefore could not consent to, the Fee-Split Agreement,

4    which would result in a fee that is not proportional to the work performed by each party as required

5    by the New Jersey Rules of Professional Conduct.[130] Hagens Berman rescinded the agreement after

6    it learned that Hart did not agree to the fee-split or settlement.[131] Because the agreement is

7    unenforceable, Hagens Berman is entitled to summary judgment on Plaintiff's breach-of-contract

8    claim. *See* Cal. Civ. Code §1689(6) (permitting party to rescind contract when the "public interest will

9    be prejudiced by permitting the contract to stand.").

10   **B.    Even if the Fee-Split Agreement was not void, the agreement cannot be enforced**

11   **because there was a failure of consideration.**

12        When a party to an agreement to share fees does not devote his services to promoting the

13   common interests of all parties to such agreement, consideration fails, rendering the fee-split

14   agreement unenforceable. *See Denver v. Roane*, 99 U.S. 355, 357-48 (1878) (refusing to enforce fee-

15   split agreement for failure of consideration when attorney abandoned client's case and sought to

16   frustrate the efforts the other attorneys were making on behalf of the client.). Here, the parties

17   agreed to (1) ". . .work together in the submission of applications for fees and expenses;" (2) ". .

18   .support each other concerning the substance and merits of our fee submissions;" (3) ". . .support

19   each other and collectively, as appropriate contest any applications for fees and expenses from other

20   firms;" and (4) "support each other's application for costs."[132] These mutual obligations are adequate

21   consideration for the Fee-Split Agreement, but McIlwain and Lanier withdrew from the case shortly

22   after entering into the agreement,[133] and consequently each failed to fulfill their obligations or even

23   attempt to fulfill their obligations. Cal. Civ. Code §1689 (4) (permitting party to rescind a contract

24   when there is a failure of consideration caused by the other party).

25

26   [130]Aragon Decl. ¶ 56, Ex. M ¶ 7.

     [131]Carey Decl. ¶ 30.

27   [132]*Id.,* Ex. B.

28   [133]Aragon Decl. ¶ 57, Ex. G (*Hart* Dkts. 79, 98).

After Hart terminated Lanier and McIlwain and forbade them from working on his case, Lanier and McIlwain *voluntarily* withdrew as counsel on October 16, 2013[134] and November 11, 2013[135] respectively. The firms could have filed a new putative class action with new putative class representatives and attempted to fulfill their obligations, but instead each withdrew from the case and did nothing to further the settlement. As such, consideration failed and the Fee-Split Agreement is unenforceable. *Denver*, 99 U.S. at 357-48; *see also Mark v. Spencer,* 166 Cal. App. 4th 219, 229 (2008) (fee-sharing agreements in class cases "must bear some relationship to the services rendered").

Further, the Fee-Split Agreement specifically contemplated the participation of Lanier.[136] McIlwain admits he is not a class-action attorney and cannot prosecute a class action on his own. He associated Lanier for its litigation expertise, including its ability to bring civil procedure expert Arthur Miller to the case.[137] Hagens Berman would not have entered into the Fee-Split Agreement without Lanier's participation.[138] Because the agreement specifically contemplated Lanier and McIlwain as counsel of record for *Hart,* and both firms withdrew as counsel of record and did nothing to fulfill its obligations under the Fee-Split Agreement, the agreement is unenforceable. *See Cazares v. Saenz,* 208 Cal. App. 3d 279, 280 (1989) (refusing to enforce fee-sharing agreement when the original attorney who entered into fee-sharing agreement was unable to continue his services and successor counsel, a partner in the same firm, took over).

**C.      Even if there is no failure of consideration, the Fee-Split Agreement is still unenforceable because a condition precedent to the agreement did not occur.**

Hagens Berman is entitled to summary judgment on Plaintiff's breach-of-contract claim because a condition precedent to the Fee-Split Agreement—consummating the obligations in the Term Sheet—never occurred. Cal. Civ. Code, § 1439; *see, e.g., Western Grocer Co. v. New York Oversea Co.,* 28 F.2d 518, 520 (N.D. Cal. 1928) (one who is not ready, able, and willing to perform a contract

---

[134]*Id.* (*Hart* Dkt. 79).

[135]*Id.* (*Hart* Dkt. 98).

[136] Carey Decl. ¶ 52, Ex. B.

[137] Aragon Decl. ¶ 59, Ex. B at 111:16-112:3.

[138] Carey Decl. ¶ 53.

when due cannot recover for an anticipatory breach of the contract by the other party). A condition precedent is an act of a party that must be performed before the contractual right accrues or contractual duty arises. Cal. Civ. Code § 1436. When a contract contains a condition precedent, no right to enforce that contract can arise until that condition has been fulfilled. *Barroso v. Ocwen Loan Servicing, LLC*, 208 Cal. App. 4th 1001, 1009 (2012).[139]

Here, the parties agreed to consolidate their cases, obtain final approval, and eventually split attorneys' fees. To accomplish these goals, the parties first agreed in principle to the Term Sheet. The Term Sheet, however, was silent as to attorneys' fees, including the allocation of fees between the attorneys for each class.[140] During the mediation the right-of-publicity attorneys agreed to work together and split fees because the antitrust plaintiffs had divergent interests and a collective effort would benefit the putative classes and likely result in a higher aggregated fee award.[141] Assisted by the mediator, the right-of-publicity attorneys agreed to resolve any potential disputes between them regarding allocation of attorneys' fees by entering into the Fee-Split Agreement.[142] The agreement sought to maximize the collective fee for the right-of-publicity attorneys by supporting each other and opposing all other fee applications.

Because the Fee-Split Agreement and Term Sheet were agreed to on the same day and had the same ultimate purpose, to globally resolve the underlying EA class litigation, the two documents must be construed together.[143] *See Harm v. Frasher*, 181 Cal. App. 2d 405, 412–13 (Ct. App. 1960) ("Where two or more written instruments are executed contemporaneously, with reference to each other, for the purpose of attaining a preconceived object, they must all be construed together and effect given, if possible, to the purpose intended to be accomplished.") (internal citations omitted);

---

[139] It is undisputed that California law applies to Plaintiff's claims. *See, e.g.*, Dkt 89 (Plaintiff applies California substantive law in his Motion for Partial Summary Judgment to argue he is entitled to judgment on his breach-of-contract claim).

[140] *See generally id.*

[141] Carey Decl. ¶ 12.

[142] The parties agreed in principle to the terms ultimately encompassed in the Fee-Split Agreement during the September 10, 2013 mediation (Aragon Decl., Ex. V at 24:8-10), and the agreement was officially executed by the parties on September 24, 2013 (Carey Decl., Ex. B).

[143] Aragon Decl. ¶ 60.

1    *Symonds v. Sherman*, 219 Cal. 249, 253 (1933) (citing Cal. Civ. Code, § 1642) (holding several papers

2    relating to same subject-matter and executed as parts of substantially one transaction are to be

3    construed together as one contract).

4           Further, the Fee-Split Agreement is dependent upon and designed to ensure the approval of

5    the Term Sheet. The first paragraph of the Fee-Split Agreement states: "I am writing to confirm

6    what [the attorneys representing the New Jersey right-of-publicity plaintiffs][144] understand our

7    agreement to be regarding the current proposal from Randy Wulffe [sic] to **settle** the EA

8    litigation."[145] The "current proposal" to "settle" the EA litigation was the Term Sheet[146] circulated by

9    mediator Wulff and accepted by all parties on September 24, 2013.[147] The plain language of the Fee-

10   Split Agreement secured promises from each firm to work together and support each other in their

11   collective efforts to obtain the right to fees and, as a result of those efforts, the parties would share

12   fees.[148] In other words, the agreement was a proposal for counsel for the right-of-publicity plaintiffs

13   to carry out the Term Sheet and share fees, not a stand-alone agreement. As such, consummating

14   the Term Sheet and obtaining final approval is a condition precedent to enforcing the Fee-Split

15   Agreement.[149]

16          Because McIlwain never fulfilled (or even attempted to fulfill) the other obligations he

17   personally agreed to in the Term Sheet, the duty to share fees never arose. *Van Norden v. Metson*, 75

18   Cal. App. 2d 595, 598 (1946) (holding "where a payment is agreed to be made on the occurrence of

19   a future event and, through no fault of the promisor, the event does not occur there can be no

20   recovery on the promise."). After McIlwain was fired and replaced by successor counsel, the parties

21   had to engage in new negotiations that lasted almost an entire year. The parties drafted a long-form

22

23          [144] The email containing the Fee-Split Agreement was sent by Lanier.

            [145] Carey Decl., Ex. B (emphasis added).

24          [146] *Id.*, Ex. B.

25          [147] Aragon Decl. ¶ 16, Ex. W (9/24/13 email from Randall Wulff).

            [148] Carey Decl., Ex. B.

26
            [149] *Id.*, Ex. A (This agreement is subject to Court approval. The parties agree to cooperate in the
27   preparation and presentation to the Court of a long-form agreement for approval by the Court…If
     the Court does not approve the settlement, this agreement will be void ab initio and nothing herein
28   may be used against any party to this agreement for any purpose whatsoever.).

1  agreement that substantively altered the allocation of monies to the competing classes.[150] Hagens

2  Berman was also forced to negotiate a separate fee-sharing agreement with Hart's successor counsel,

3  with mediator Wulff's assistance.[151] Successor counsel fulfilled the duties contemplated by the Term

4  Sheet, not McIlwain. Because McIlwain failed to fulfill clearly stated condition precedents in the

5  Term Sheet, no enforceable contract right to split fees ever arose. *Id.*

6
7  **D.**     **Hagens Berman properly rescinded the Fee-Split Agreement when it learned that its consent to the agreement was induced by a unilateral mistake.**

8         An essential element of a contract is the consent of the parties. Civ. Code § 1550(2). But

9  even if consent is freely given, a party may rescind a contract if consent was given by mistake or

10 fraud. *See* Cal. Civ. Code §1689(b)(1) ("A party to a contract may rescind the contract…If the

11 consent of the party rescinding, or of any party jointly contracting with him, was given by mistake

12 [or] fraud…, exercised by or with the connivance of the party as to whom he rescinds, or of any

13 other party to the contract jointly interested with such party.").

14        Here, Hagens Berman consented to the agreements with the mistaken understanding that

15 Hart, the only putative class representative for the *Hart* action, consented to settle the case and split

16 fees.[152] This was a mistake. Hart never agreed to settle the case and never consented to allow his

17 attorneys to share fees with Hagens Berman. McIlwain, unlike Hagens Berman, knew that Hart did

18 not consent to spitting fees or settling the case because he never presented, discussed, or received

19 approval from Hart for either agreement. McIlwain knew that he needed permission from his client

20 to settle a case and share fees.[153] Hagens Berman had the right to rescind the agreement because

21 consent was induced by a unilateral mistake *See, e.g.,* Restatement (Second) of Contracts § 153 (1981)

22 (permitting party to rescind contract where other party knew or had reason to know of the mistake);

23
24
25      [150] *Id.* ¶¶ 38, 47.

26      [151] *Id.* ¶¶ 32-37.

27      [152] *Id.* ¶ 25.

28      [153] Aragon Decl., Ex. L (Mr. McIlwain states, "we needed something in writing from Ryan Hart agreeing to allow me to share my attorney fee with your firm" in an email to Lanier.).

1    *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 281 (2001) (California adopts the Restatement rule as to

2    unilateral mistake).

3         Hagens Berman's mistake was reasonable. All attorneys are expected to understand and

4    follow the rules of professional conduct. *See Channel Lumber Co. v. Porter Simon*, 78 Cal. App. 4th

5    1222, 1228, (2000); *see also* 46 N.J. Prac., New Jersey Attorney Discipline § 20:9. California and New

6    Jersey both require clients to give informed consent before an attorney can share a fee and settle a

7    case. *See* N.J. RPC 1.5; CA RPC 2-200. The Firm reasonably believed McIlwain complied with all

8    applicable ethical rules and obtained consent from Hart before executing the Fee-Split Agreement.

9    As established *supra*, a contract that violates the rules of professional responsibility is void as a

10   violation of public policy. Because no reasonable, licensed attorney would settle a case or share fees

11   without informed consent, Hagens Berman's mistaken believe that McIlwain fulfilled his ethical

12   obligations before entering into the Fee-Split Agreement was reasonable.

13        The Firm promptly rescinded the Fee-Split Agreement.[154] A party seeking to rescind a

14   contract must give prompt notice to the inducing party and return any consideration received. *Vill.*

15   *Northridge Homeowners Assn. v. State Farm Fire & Cas. Co.*, 50 Cal. 4th 913, 921 (2010). When Hagens

16   Berman learned that Hart did not approve the settlement and was not willing to affirm the

17   agreement, Hagens Berman promptly notified McIlwain that it repudiated the Fee-Split

18   Agreement.[155] And because McIlwain did nothing to further the settlement, Hagens Berman had no

19   consideration to return to McIlwain.

20        Because the Fee-Split Agreement was induced by a unilateral mistake and Hagens Berman

21   promptly rescinded the agreement after learning of the mistake, the Fee-Split Agreement is

22   unenforceable.

23   **E.    Hagens Berman is entitled to summary judgment on Plaintiff's covenant of good
           faith and fair dealing claim as a matter of law.**

24

25        McIlwain's breach of the implied covenant of good faith and fair dealing claim fails as a

26   matter of law because there is no contract to enforce and McIlwain conflates a covenant claim with

27        [154] Carey Decl. ¶ 29.

28        [155] *Id.* ¶ 25.

a claim for an express breach of contract. An essential element of a claim for breach of the implied covenant of good faith and fair dealing is the existence of an enforceable contract.[156] *Woods v. Google, Inc.*, 889 F. Supp. 2d 1182, 1194 (N.D. Cal. 2012). As laid out *supra*, there is no contract between the parties. *See* Witkin, Summary 11th Contracts § 822 (2019) (citing *Avidity Partners, LLC v. State of California*, 221 Cal. App. 4th 1180, 1187 (2013) (breach of the covenant of good faith and fair dealing rests on the existence of a specific contractual obligation. Without a contract, there is no basis for a covenant of good faith and fair dealing claim.)); *see also Smith v. City & Cty. of San Francisco*, 225 Cal. App. 3d 38, 49 (Ct. App. 1990) (refusing to impose a "unilateral duty of good faith" where there is no contract between the parties). Because there is no enforceable contract, Hagens Berman is entitled to summary judgment on McIlwain's covenant claim.

Further, McIlwain's covenant claim is entirely based on alleged breaches of an express contract term, but a breach of express terms does not breach the covenant of good faith and fair dealing. *Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1079 (S.D. Cal. 2017) (citing *Inter–Mark USA, Inc. v. Intuit, Inc.*, No. C-07-04178 JCS, 2008 WL 552482, at *7 (N.D. Cal. Feb. 27, 2008) ("[T]he obligations imposed by the implied covenant of good faith and fair dealing are not those set out in the terms of the contract itself, but rather are obligations imposed by law governing the manner in which the contractual obligations must be discharged—fairly and in good faith."). Covent claims exist to cover situations where discretion is vested in the other party who then unfairly exercises its discretion. *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal, Inc.*, 2 Cal.4th 342, 372 (1992) ("The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another."). That is not McIlwain's claim here; Hagens Berman is entitled to judgment on McIlwain's covenant claim as a matter of law.

## F.    Hagens Berman is entitled to judgment on McIlwain's interference with prospective economic advantage claim as a matter of law.

McIlwain claims that Hagens Berman's alleged breach of contract constitutes an interference with prospective economic advantage. Not so. Even if the Fee-Split Agreement is an enforceable

---

[156] The covenant claim can also be dismissed because Plaintiff cannot show he fulfilled the terms of the contract, a prerequisite to a covenant claim. *Id.*

contract, a party to a contract giving rise to a prospective economic relationship is not liable in tort for allegedly interfering with that relationship. *Redbox Automated Retail, LLC v. Buena Vista Home Entm't, Inc.*, 399 F. Supp. 3d 1018, 1033 (C.D. Cal. 2019) (an interference with prospective economic advantage claim requires that the defendant be a ***third party*** to the contract or relationship with which it has allegedly interfered). It is undisputed that that Hagens Berman is a party to the Fee-Split Agreement, and therefore the Firm cannot be liable in tort for allegedly interfering with that agreement.[157] *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (a party who merely breached his contract cannot be held liable in tort "as he has not assumed the role of an intentional interferer."). McIlwain conflates tort and contract, and has failed to allege a valid tort claim. Because McIlwain's claims against Hagens Berman are based in contract, not tort, and there is no valid breach-of-contract claim, his claim for interference with prospective economic advantage must be dismissed.

## IV.    CONCLUSION

No disputes of material fact exist regarding the formation of the alleged contract, its terms, McIlwain's failure to obtain informed consent, or Hagens Berman's role as a party to the purported contract. For this reason, Hagens Berman respectfully requests that its Motion for Summary Judgment be granted.

Dated: November 21, 2019                  Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By      /s/ Leonard W. Aragon
  LEONARD W. ARAGON
Leonard W. Aragon (*pro hac vice*)
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003

Attorneys for Defendant
Hagens Berman Sobol Shapiro LLP

---

[157] Compl. at 5-6, ¶ 10.