IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MCILWAIN, LLC,

        Plaintiff,

    v.

STEVE W. BERMAN, et al.,

        Defendants.

Case No. 18-cv-03127 CW

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT

(Dkt. No. 123)

Defendant Hagens Berman Sobol Shapiro LLP (Hagens Berman) moves for summary judgment with respect to all three claims that Plaintiff McIlwain, LLC (McIlwain) has asserted against it. McIlwain opposes the motion. For the reasons set forth below, the Court GRANTS the motion in its entirety.

BACKGROUND

I.   Procedural history

This action arises out of the breach of an alleged contract to split attorneys' fees between three law firms: McIlwain, non-party Lanier Law Firm, and Defendant Hagens Berman. See Compl. ¶ 9 at 5.[1]  The attorneys' fees to be apportioned were those that the Court would award to these three law firms after approving the settlement of three similar putative class actions filed against

---

[1] The paragraph numbers in the complaint repeat several times; accordingly, paragraph numbers, as well as page numbers, are cited in this order.

United States District Court
Northern District of California

Electronic Arts (EA), in which the plaintiffs sought damages arising out of EA's use of student-athletes' images and likenesses in video games (right-of-publicity actions).

One of these actions was filed in 2009 by McKenna McIlwain LLP on behalf of plaintiff Ryan Hart in the Superior Court of New Jersey; it was subsequently removed to the District of New Jersey and captioned Hart v. Electronic Arts Inc., Case No. 09-cv-05990 (Hart).  Ryan Hart was initially represented by McKenna McIlwain LLP; that firm was replaced by Timothy McIlwain[2] in July 2013.  See Hart, Docket Nos. 60, 61.  Timothy McIlwain withdrew as counsel for Ryan Hart in November 2013.  No class was ever certified in Hart. Timothy McIlwain was never appointed as interim class counsel, and Ryan Hart was never appointed as interim class representative.

The remaining two actions were filed by Hagens Berman: one in the Northern District of California, captioned Keller v. Electronic Arts, Inc., Case No. 09-cv-1967 (Keller), and the other in the District of New Jersey, captioned Alston v. Electronic Arts, Case No. 13-cv-5157 (Alston).  Collegiate Licensing Company (CLC) was the second defendant in Keller.

The plaintiffs in Keller, Alston, and Hart were referred to as the "right-of-publicity plaintiffs" because they asserted claims on behalf of putative classes under the right-of-publicity laws of California and New Jersey.

A fourth action, captioned O'Bannon v. NCAA, Case No. 09-cv-3329 (O'Bannon) was filed by Hausfeld LLP.  It asserted claims on

---

[2] Timothy McIlwain is a "solo practitioner" operating as "McIlwain LLC a/k/a Timothy J. McIlwain, Attorney at Law."  See Complaint ¶ 1 at 1.  Timothy McIlwain is the principal of McIlwain. Timothy McIlwain Decl. ¶ 1, Docket No. 134.

behalf of putative classes against the National Collegiate Athletic Association (NCAA), EA, and CLC under the Sherman Act, 15 U.S.C. § 1.  The plaintiffs in this action were referred to as the "antitrust plaintiffs."

On January 15, 2010, this Court consolidated O'Bannon and Keller along with several other pending related actions into an action captioned In re NCAA Student-Athlete Name & Likeness Licensing Litigation, Case No. 09-cv-1967.  O'Bannon, Docket No. 139.  On that date, the Court appointed Hausfeld LLP and Hagens Berman as co-lead counsel in the consolidated case, with Hausfeld LLP taking primary responsibility for the O'Bannon plaintiffs' antitrust claims and Hagens Berman taking primary responsibility for the Keller plaintiffs' right-of-publicity claims.

As described in more detail below, the right-of-publicity plaintiffs and antitrust plaintiffs in the actions described above reached a global settlement with EA, and their counsel moved for, and were awarded, attorneys' fees and costs when the Court approved the settlement.

In the present action, McIlwain asserts three claims against Hagens Berman, the remaining Defendant[3]: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and (3) interference with prospective economic advantage.  All of these claims arise out of Hagens Berman's failure to split with McIlwain, pursuant to an alleged fee-splitting agreement, the attorneys' fees

_____

[3] The Court dismissed McIlwain's claims against individual defendants Steve Berman, Robert B. Carey, and Leonard W. Aragon, all of whom are partners at Hagens Berman.  See Order of November 5, 2018, Docket No. 66; Order of November 21, 2018, Docket No. 68.

United States District Court
Northern District of California

United States District Court
Northern District of California

that the Court awarded it when the Court approved the settlement of the right-of-publicity claims against EA.

McIlwain moved for partial summary judgment on its claim for breach of contract on May 2, 2019.  Docket No. 86.  The Court denied the motion on October 22, 2019.  Docket No. 121.

The Court held a further case management conference on November 19, 2019, during which the Court set, at Hagens Berman's request, a briefing schedule for a motion for summary judgment by Hagens Berman.  See Minutes and Case Management Order, Docket No. 127.  McIlwain did not oppose this request at the case management conference.[4]

II.   Relevant undisputed facts[5]

Timothy McIlwain of "Timothy McIlwain, Attorney at Law, LLC" became counsel for Ryan Hart in Hart on July 10, 2013.  Hart, Docket Nos. 60, 61.  Timothy McIlwain is the principal of McIlwain LLC.  Timothy McIlwain Decl. ¶ 1, Docket No. 134.  McIlwain is located in New Jersey, Compl. ¶ 1 at 1, and Timothy McIlwain is licensed to practice in New Jersey, see Docket No. 73.

McIlwain produced a document in this litigation titled "Class Representative/Attorney Representation Agreement," which appears to set forth the terms of the attorney-client relationship between the

----

[4] McIlwain requests that the Court deny Hagens Berman's present motion for summary judgment as untimely.  See Opp'n at 10-11, Docket No. 133.  This request is not well-taken.  Hagens Berman filed the present motion on November 21, 2019, which was the deadline set by the Court during the November 19, 2019, case management conference.  See Minutes and Case Management Order, Docket No. 127.  Accordingly, the present motion is timely.

[5] McIlwain's opposition contains a number of assertions that are not supported by any admissible evidence or other materials that the Court can consider in deciding the present motion.  These unsupported assertions are therefore omitted from this order.

"Law Offices Timothy McIlwain [sic], Attorney at Law, LLC" and Ryan Hart.  Timothy McIlwain Decl., Ex. 20, Docket No. 134-1 at 108-09. This document is not signed by Ryan Hart.  See id., Docket No. 134-1 at 109.  The document states, in relevant part:

> CLIENT understands that the ATTORNEYS reserve the right to determine all litigation tactics on behalf of CLIENT, including adding other class representatives to the matter and bringing in additional law firms to work with the ATTORNEYS on the case, who will be compensated either in the same manner as ATTORNEYS or in another manner to be determined by ATTORNEYS.

Id. ¶ 4, Docket No. 134-1 at 108.  Ryan Hart testified at his deposition, which took place in August 2019, that he did not recall previously receiving or signing this document.  Ryan Hart Dep. Tr. at 17, Docket No. 124-1 at 129.  Ryan Hart also testified, however, that "back then [he] w[as] okay with" the provision of this unsigned agreement that provides that the "attorneys reserve the right to determine all litigation tactics for the client, including adding other class representatives to the matter and bringing in additional law firms . . . who will be compensated either in the same manner as attorney or in another manner to be determined by attorneys."  Id. at 38-39, 70-71, Docket No. 134-1 at 4-7.

In a letter dated September 4, 2013, Timothy McIlwain notified Ryan Hart of an upcoming mediation with EA, which was scheduled for September 10, 2013.  Timothy McIlwain Decl., Ex. 21, Docket No. 134-1 at 112-14.  In the same letter, Timothy McIlwain requested Ryan Hart's written consent to add the Lanier Law Firm as co-counsel in Hart and to permit Timothy McIlwain to share with the Lanier Law Firm any attorneys' fees he was awarded in Hart. Specifically, the letter states:

5

> While you have agreed to the Lanier Law Firm
> joining us, the rules of professional conduct
> require that legal services agreements be
> agreed to in writing.  As I have stated, the
> Lanier Law Firm joining your case will not
> require you to pay more in legal fees . . . .
> I have agreed to share my attorney fee with
> the Lanier Law Firm on a sliding scale that
> entitles them to 25% of my attorney fee if the
> case resolves at mediation and will increase
> to as high as 50% of the total attorney fees
> approved by the court in connection with your
> case after mediation.  Enclosed please find an
> email exchange between the Lanier Law Firm and
> me from July 31, 2013 until August 1, 2013,
> which codifies our agreement on the shared
> attorney fee.  Again, I know you have agreed
> to this, but if you could review this letter
> and fax/email back your signature indicated
> below that you agree to the my [sic] shared
> attorney fee with the Lanier Law Firm that
> would be helpful prior to mediation.

Id.  This letter does not request Ryan Hart's consent to add as co-counsel, or to share attorneys' fees with, any other law firm.  The letter was apparently signed by Ryan Hart on September 4, 2013.  Id.  Various members of the Lanier Law Firm, including Mark Lanier and Eugene Egdorf, were admitted pro hac vice as counsel for Ryan Hart in Hart on August 27, 2013.  Hart, Docket No. 69.

McIlwain has not submitted a similar letter showing that Ryan Hart consented to adding Hagens Berman as co-counsel or consenting to McIlwain sharing attorneys' fees with Hagens Berman.

On September 10, 2013, the plaintiffs in the right-of-publicity actions and O'Bannon participated in a mediation with EA before mediator Randall Wulff.  The parties could not reach a settlement on September 10 but they continued to negotiate.  Carey Decl. ¶ 16, Docket No. 111.

On September 24, 2013, the mediator, Randall Wulff, emailed counsel who participated in the mediation, stating that "[a]ll parties have accepted the mediator's proposal, which includes the

agreements among plaintiffs' counsel regarding allocation that were finalized today.  I have asked Jamie to reach out immediately to plaintiffs' counsel and start the documentation process."  Aragon Decl., Ex. W, Docket No. 124-1 at 246.

Also on September 24, 2013, Eugene Egdorf of the Lanier Law Firm wrote an email to Steve Berman of Hagens Berman, and copied Robert Carey of Hagens Berman and Timothy McIlwain; this email states:

> I am writing to confirm what I understand our agreement to be regarding the current proposal from Randy Wulffe [sic] to settle the EA litigation (Hart, Keller, and O'Bannon).  Please confirm our agreement and advise of any changes.
>
> 1. We agree to work together in the submission of applications for fees and expenses;
>
> 2. We agree to support each other concerning the substance and merits of our fee submissions;
>
> 3. We agree to support each other and collectively, as appropriate, contest any applications for fees and expenses from other firms;
>
> 4. For any fee award or agreement to our firms (Hagens Berman, The Lanier Law Firm, and Tim McIlwain), we agree to consider those as a joint award which will be pooled together for our collective group;
>
> 5. From that joint award to our collective group, irrespective of the methodology, substance and distribution ordered by the Court, we agree that 60% of such fees will be paid to Hagens Berman, and the remaining 40% to Lanier and McIlwain;
>
> 6. Each of the firms can submit a request for recovery of their reasonable expenses, and we will support each other in that regard;
>
> 7. Lanier and McIlwain will be added as counsel to the Keller case against the NCAA; the above agreement concerning the distribution of fees on a 60/40 basis will NOT apply to that relationship, which will instead be governed by either a future separate agreement or by Court Order.

United States District Court
Northern District of California

1  Aragon Decl., Ex. H, Docket No. 124-1 at 121 (fee-splitting
2  agreement).  Hagens Berman's Rule 30(b)(6)'s designee, Robert
3  Carey, testified that the "60/40 percentage" referred to in this
4  email chain was discussed and agreed to on September 10, 2013, but
5  the parties "just waited two weeks to confirm it."  Hagens Berman
6  Rule 30(b)(6) Dep. Tr. at 24, Aragon Decl., Ex. V, Docket No. 124-1
7  at 244.

8      On September 26, 2013, counsel for the right-of-publicity
9  plaintiffs and the O'Bannon antitrust plaintiffs signed a term
10  sheet providing, among other things, that EA would pay $40 million
11  to settle the claims asserted, or that could have been asserted,
12  against it and CLC.[6]  Term Sheet at 1, Carey Decl., Ex. A, Docket
13  No. 125-1 at 2.  Timothy McIlwain signed this term sheet as
14  "Plaintiffs' Counsel in Hart"; this document does not mention
15  McIlwain LLC.  Id. at 5, Docket No. 125-1 at 6.  In exchange, "the
16  parties" agreed, in relevant part, to "cooperate in the preparation
17  and presentation to the Court of a long-form agreement for approval
18  by the Court."  Id. at 2, Docket No. 125-1 at 3.  The term sheet
19  expressly stated that the agreement would be "subject to Court
20  approval."  Id.

21      Ryan Hart first learned about the settlement through the
22  media, not Timothy McIlwain.  Hart Dep. Tr. at 25, Aragon Decl.,
23  Ex. J, Docket No. 124-1 at 131.  Ryan Hart testified at his
24  deposition that he never gave Timothy McIlwain or the Lanier Law
25  Firm permission to enter into a settlement with respect to Hart.
26  Id. at 26, Docket No. 124-1 at 132.

27  ───────────────────
      [6] CLC was not a party to the term sheet but was one of the
28  settlement's released parties.

Ryan Hart rehired Keith McKenna, who had initially represented him in <u>Hart</u>, after he learned that Timothy McIlwain signed the term sheet without his consent.  <u>Id.</u> at 20, Docket No. 124-1 at 130.  On October 3, 2013, Ryan Hart, through his new counsel, sent a letter to Timothy McIlwain requesting that he file a notice of substitution indicating that Ryan Hart's new counsel was Keith McKenna of the McKenna Law Firm, LLC.  Timothy McIlwain Decl., Ex. 12, Docket No. 134-1 at 40.  Keith McKenna filed a notice of appearance as counsel for Ryan Hart on October 10, 2013.  <u>Hart</u>, Docket No. 77.  Ryan Hart testified that he did not authorize Timothy McIlwain to work on <u>Hart</u> after he terminated him as his counsel.  Hart Dep. Tr. at 29, Aragon Decl., Ex. J, Docket No. 124-1 at 133.

An email dated October 10, 2013, shows that Robert Carey of Hagens Berman wrote to members of the Lanier Law Firm regarding the "dispute" with Ryan Hart, stating that, based on the advice of an "ethics expert," Hagens Berman "cannot share information relating to the settlement (at least in sofar [sic] as it relates to Hart)," and that "ER 1.9 may preclude you from participating further with any client, unless the Hart/McIlwain fee agreement provides for multiple representation."  Aragon Decl., Ex. I, Docket No. 124-1 at 123.

On October 16, 2013, members of the Lanier Law Firm withdrew as counsel for Ryan Hart in <u>Hart</u>.  <u>Hart</u>, Docket No. 79.

On November 7, 2013, Timothy McIlwain and Ryan Hart's new counsel, Keith McKenna and Arthur Owens, entered into a "stipulation and agreement between counsel" pursuant to which Timothy McIlwain, in relevant part, consented to "[m]ove forward

United States District Court
Northern District of California

with the settlement" and "withdraw [his] appearance" in <u>Hart</u>.
Timothy McIlwain Decl., Ex. 14, Docket No. 134-1 at 65.
Additionally, this agreement states that "McIlwain does not object
to Hagens Berman or Lum Law firm [sic] and/or McKenna being
settlement counsel"; that "McIlwain is willing to assist in
obtaining affidavits for additional class representatives as
requested"; that "McIlwain retains the right to comment, but not
control the settlement agreement and motion for approval"; that
"McIlwain, McKenna and Lum law firm retain the right to file their
fee application and retain the right to respond to objections";
that the parties will be subject to "[c]onfidentiality except as
may be required between the parties to support the fee application
or by law and will undertake the efforts to file the agreement
under seal"; and that "McIlwain agrees to take no action in any of
the four (4) cases listed in the term sheet until disposition of
the settlement including appeal except as provided above and except
to the extent that the final settlement agreement is materially
different from the term sheet." <u>Id.</u>  This document was signed by
Timothy McIlwain but contains references to a McIlwain "law firm."
<u>See</u> <u>id.</u> at 2, Docket No. 134-1 at 66.

On November 11, 2013, Timothy McIlwain withdrew as counsel for
Ryan Hart in <u>Hart</u>.  <u>Hart</u>, Docket No. 98.

Counsel for the right-of-publicity plaintiffs (not including
McIlwain) and the <u>O'Bannon</u> antitrust plaintiffs continued to
negotiate the settlement with EA; these negotiations lasted months.
Carey Decl. ¶ 36, Docket No. 125.  In the process, they modified
certain terms of the proposed settlement, particularly with respect

to how to allocate the settlement fund among the various classes of plaintiffs.  Id. ¶¶ 36, 47.

The right-of-publicity plaintiffs, the O'Bannon antitrust plaintiffs, and EA ultimately finalized the settlement, which they filed in July 2014.  Aragon Decl., Ex. U, Docket No. 124-1. Counsel for the right-of-publicity plaintiffs and the O'Bannon antitrust plaintiffs moved for awards of attorneys' fees and costs. Timothy McIlwain also moved for an award of fees and costs on the ground that he had been counsel for Ryan Hart in Hart.

On August 18, 2015, this Court entered an order resolving the motions for fees and costs, which was later corrected on December 15, 2015.  In that order, the Court awarded, in relevant part, $696,700 in fees from the EA settlement to Timothy McIlwain and the Lanier Law Firm, collectively, as former counsel in Hart, based on their lodestar; and $5,721,000 in fees from the EA settlement to Hagens Berman, as counsel for the Keller right-of-publicity plaintiffs, based on its lodestar.  Keller, Order at 2-3, Docket No. 1285.

On August 19, 2015, this Court granted final approval to the settlement between the right-of-publicity and antitrust plaintiffs and EA.  See Keller, Docket No. 1243.

Hagens Berman admits that it did not split with McIlwain the $5,721,000 in fees that the Court awarded to it from the EA settlement.  Answer ¶ 20, Docket No. 69.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is

clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim.  Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation.  Nissan, 210 F.3d at 1105.  If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists.  Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition.  Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial.  Id. at 1107.

ANALYSIS

Hagens Berman moves for summary judgment on all three claims in the complaint, which the Court addresses below, in turn.

//

I.   Breach of Contract

The first claim in the complaint is for breach of contract. Compl. ¶¶ 1-21 at 3-8.  This claim is premised on allegations that Hagens Berman breached the fee-splitting agreement by, among other things, failing to split with McIlwain the fees it was awarded after the Court approved the settlement with EA.  Id.

Under California law[7], "the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."  Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011).

Hagens Berman argues that it is entitled to judgment as a matter of law as to McIlwain's claim for breach of contract on the grounds that: the fee-splitting agreement is unenforceable because (1) it violates New Jersey Rule of Professional Conduct (RPC) 1.5(e), (2) a condition precedent to the contract never occurred (namely, the consummation of the September 26, 2013, term sheet), and (3) Hagens Berman timely rescinded the agreement because of a unilateral mistake (specifically, Hagens Berman's mistaken belief that McIlwain had agreed to the fee-splitting contract and term sheet with the consent of Ryan Hart).  Hagens Berman further argues that, even if the fee-splitting agreement is enforceable, McIlwain's claim for breach of contract fails because McIlwain never performed its obligations under the agreement.

---

[7] Both parties agree that all three claims in the complaint are governed by California law.

14

United States District Court
Northern District of California

As discussed below, the Court concludes that the fee-splitting agreement is unenforceable because it violates New Jersey RPC 1.5(e) and therefore violates public policy.  Thus, the Court will grant Hagens Berman's summary judgment motion as to McIlwain's claim for breach of contract.

"Under general principles of California contract law, a contract is unlawful, and therefore unenforceable, if it is '[c]ontrary to an express provision of law' or '[c]ontrary to the policy of express law, though not expressly prohibited.'" Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co., 6 Cal. 5th 59, 73 (2018) (quoting Cal. Civ. Code § 1667) (alterations in the original).  "California courts have held that a contract or transaction involving attorneys may be declared unenforceable for violation of the Rules of Professional Conduct[.]"  Id.  Whether a contract is unenforceable based on these principles is a question of law.  See McIntosh v. Mills, 121 Cal. App. 4th 333, 343 (2004).

Here, Hagens Berman argues that the fee-splitting agreement is unenforceable because it violates New Jersey RPC 1.5(e); this rule provides:

> (e) Except as otherwise provided by the Court Rules, a division of fee between lawyers who are not in the same firm may be made only if:
>
> > (1) the division is in proportion to the services performed by each lawyer, or, by written agreement with the client, each lawyer assumes joint responsibility for the representation; and
> >
> > (2) the client is notified of the fee division; and
> >
> > (3) the client consents to the participation of all the lawyers involved; and

(4) the total fee is reasonable.

N.J. RPC 1.5(e).

California contract law precludes a court from enforcing an agreement to divide attorneys' fees between lawyers of different law firms if the agreement violates the California Rules of Professional Conduct (RPC), because any such agreement would violate public policy.  In <u>Chambers v. Kay</u>, 29 Cal. 4th 142, 161 (2002), the Supreme Court of California held that an agreement to divide attorneys' fees was unenforceable on the ground that the arrangement was undertaken without written client consent in violation of California RPC 2-200.[8]  The court reasoned that the California RPC had been adopted with its approval in order to "protect the public and to promote respect and confidence in the legal profession."  <u>Id.</u> at 158.  In light of the public-policy purpose underlying the California RPC, the Supreme Court of California concluded that it would be "absurd" for a court to aid an attorney in enforcing a contract that violated the RPC.  <u>Id.</u> at 161 ("[I]t would be absurd for this or any other court to aid Chambers in accomplishing a fee division that would violate the

---

[8] California RPC 2-200 provides, in relevant part:

> A member shall not divide a fee for legal services with a lawyer who is not a partner of, associate of, or shareholder with the member unless:

> (1) The client has consented in writing thereto after a full disclosure has been made in writing that a division of fees will be made and the terms of such division; and

> (2) The total fee charged by all lawyers is not increased solely by reason of the provision for division of fees and is not unconscionable as that term is defined in rule 4-200.

rule's explicit requirement of written client consent and would subject Chambers to professional discipline.").

Likewise, under New Jersey contract law, an agreement among lawyers that violates the New Jersey RPC violates public policy and is therefore unenforceable.  Jacob v. Norris, McLaughlin & Marcus, 128 N.J. 10, 17 (1992) (noting that the New Jersey RPCs "establish the state's public policies with respect to attorney conduct" and holding that "[c]ontracts that violate the RPCs violate public policy, and courts must deem them unenforceable").  The Supreme Court of New Jersey adopted the New Jersey RPC for the same purpose that the Supreme Court of California adopted the California RPC, namely to regulate the practice of law and protect the public interest.  See id.  In light of the public-interest purpose of the New Jersey RPC, it follows that an agreement among lawyers that violates the New Jersey RPC would violate public policy and would therefore be unenforceable under California, as well as New Jersey, contract law.  Cf. Chambers, 29 Cal. 4th at 126.

Here, Hagens Berman has met its burden as the moving party by pointing to the absence of evidence showing that the fee-splitting agreement at issue satisfied the requirements of New Jersey RPC 1.5(e).  As noted above, the record shows, and McIlwain does not dispute, that Timothy McIlwain was licensed at all relevant times to practice law in New Jersey and that McIlwain is a New Jersey law firm; accordingly, the fee-splitting agreement at issue is subject to the New Jersey RPC.  New Jersey RPC 1.5(e) requires, among other things, that the client be "notified of the fee division" and that the client consent "to the participation of all lawyers involved."  N.J. RPC 1.5(e).  There is no evidence showing that McIlwain

notified Ryan Hart of its fee-splitting agreement with Hagens
Berman, or that Ryan Hart consented to the participation of Hagens
Berman as McIlwain's co-counsel.  The absence of this evidence
supports the conclusion that the fee-splitting agreement did not
comply with New Jersey RPC 1.5(e) and therefore is unenforceable.

In its opposition, McIlwain fails to show that a genuine
dispute exists as to whether the fee-splitting agreement complied
with New Jersey RPC 1.5(e).  First, McIlwain appears to argue that
the fee-splitting agreement was subject to the California RPC
(specifically, California RPC 2-200) instead of the New Jersey RPC.
See Opp'n at 12-13, Docket No. 133.  McIlwain, however, cites no
authority or facts to establish that its obligations as counsel to
Ryan Hart were governed by the California RPC instead of the New
Jersey RPC.  Accordingly, McIlwain's reliance on the California
RPC, and California RPC 2-200 in particular, is misplaced.[9]

Second, McIlwain argues that Ryan Hart consented to the fee-
splitting agreement because Ryan Hart "ratified" it during his

---

[9] Even if the fee-splitting agreement were subject to
California RPC 2-200, the agreement would still be unenforceable
because there is no evidence that McIlwain complied with that rule
in connection with the agreement.  RPC 2-200 requires, among other
things, that the client consent to a fee-division among attorneys
of different firms "in writing . . . after a full disclosure has
been made in writing that a division of fees will be made and the
terms of such division."  See Cal. RPC 2-200.  Here, McIlwain has
pointed to no writing showing that it disclosed to Ryan Hart either
that it would divide its fees with Hagens Berman, or the terms of
any such division.  The absence of evidence that McIlwain made
these written disclosures is sufficient to conclude that the fee-
splitting agreement at issue violates California RPC 2-200 and is
unenforceable under Chambers, 29 Cal. 4th at 126.  McIlwain's
reliance on Mink v. Maccabee, 121 Cal. App. 4th 835 (2004), for the
proposition that client consent under California RPC 2-200 need not
be obtained until the fees in question are divided is unavailing,
because here, as noted, McIlwain's breach-of-contract claim is
defeated by the lack of evidence that McIlwain made the written
disclosures required by RPC 2-200 at any time.

deposition for this litigation, which took place in August 2019, and because Ryan Hart signed a document titled "Duties of Class Representatives," which was attached to another document that Ryan Hart did <u>not</u> sign titled "Class Representative/Attorney Representation Agreement." <u>See</u> Opp'n at 12-13, 4. Even when viewing this evidence in the light most favorable to McIlwain, it does not give rise to a genuine dispute as to whether McIlwain complied with New Jersey RPC 1.5(e).

The portions of Ryan Hart's deposition that McIlwain cites show that Ryan Hart testified that he agreed to McIlwain "bring[ing] in other law firms" (without further specification as to which law firms) and that he was "okay" with McIlwain "shar[ing] fees with another attorney" as stated in the unsigned "Class Representative/Attorney Representation Agreement." <u>See</u> Ryan Hart Dep. Tr. at 70-71. The testimony of Ryan Hart and the unsigned document just described do not suggest compliance with New Jersey RPC 1.5(e), because neither shows that McIlwain notified Ryan Hart of the specific fee apportionment with Hagens Berman, or of Hagens Berman's participation as co-counsel to McIlwain.[10] <u>See</u> <u>In Whitehead v. Stull, Stull & Brody</u>, No. CV 17-4704 (SRC), 2019 WL 1055756, at *8 (D.N.J. Mar. 5, 2019) (holding that New Jersey Rule

---

[10] Notably, as discussed above, McIlwain disclosed to Ryan Hart, in writing (via a letter dated September 4, 2013), its fee-splitting agreement with the Lanier Law Firm, including the terms of the agreed-upon fee division, and it requested Ryan Hart's consent to that fee-splitting agreement and the addition of the Lanier Law Firm as co-counsel. Timothy McIlwain Decl., Ex. 21, Docket No. 134-1 at 112-14. In that letter, McIlwain stated that he was seeking Ryan Hart's written consent because the "the rules of professional conduct require" it. <u>Id.</u> McIlwain points to no similar writing with respect to its fee-splitting agreement with Hagens Berman.

United States District Court
Northern District of California

1.5(e) requires disclosure to the client of "the parameters of the fee arrangement" in question, including "the proceeds among counsel" and the "division of labor or responsibilities among co-counsel," and that a failure to disclose these matters to the client renders the fee-division agreement unenforceable for "fail[ure] to satisfy the requirements of RPC 1.5(e)").

Because there is no genuine dispute that the fee-splitting agreement at issue violated New Jersey Rule 1.5(e), the Court concludes that the agreement violates public policy and is therefore unenforceable.  Accordingly, McIlwain's claim for breach of contract fails as a matter of law.  In light of this conclusion, the Court need not reach Hagens Berman's alternative arguments as to this claim.

II.   Breach of the implied covenant of good faith and fair dealing

The second claim in the complaint is for breach of the implied covenant of good faith and fair dealing.  Compl. ¶¶ 22-26 at 8-9. This claim is predicated on Hagens Berman's alleged breach of the fee-splitting agreement.  Id.

"The implied promise [of good faith and fair dealing] requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement." Egan v. Mutual of Omaha Ins. Co., 24 Cal. 3d 809, 818 (1979).  "In essence, the covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract."  Love v. Fire Ins. Exchange, 221 Cal. App. 3d 1136, 1153 (1990).  "The implied covenant of good faith and fair dealing

does not impose substantive terms and conditions beyond those to which the parties actually agreed." Avidity Partners, LLC v. State of California, 221 Cal. App. 4th 1180, 1204 (2013) (citation omitted). Thus, "[t]he implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation." Foley v. Interactive Data Corp., 47 Cal. 3d 654, 683–684 (1988).

Hagens Berman moves for summary judgment on McIlwain's claim for breach of the implied covenant of good faith and fair dealing on the ground that the claim fails because it depends on the fee-splitting agreement, which is unenforceable.

In its opposition, McIlwain does not squarely address, or cite any authority that contradicts, Hagens Berman's argument that this claim fails to the extent that the fee-splitting agreement is unenforceable. See Opp'n at 18-19.

A claim for breach of the implied covenant of good faith and fair dealing cannot exist without an enforceable contract. See Foley, 47 Cal. 3d at 683-684 (holding that the implied covenant "is a contract term" and "rests upon the existence of some specific contractual obligation"). Because McIlwain's claim for breach of the implied covenant of good faith and fair dealing was predicated on the fee-splitting agreement, which this Court has concluded is unenforceable, the claim fails as a matter of law. Accordingly, the Court will grant Hagens Berman's motion for summary judgment as to this claim.

//

III.   Intentional interference with prospective economic advantage

The third claim in the complaint is for intentional interference with prospective economic advantage (IIPEA).  Compl. ¶¶ 27-32 at 1-10.  This claim is predicated on allegations that Hagens Berman interfered with McIlwain's expected economic advantage from the fee-splitting agreement by refusing to split with McIlwain the attorneys' fees that it received after the Court approved the settlement with EA.  Id.

An IIPEA claim requires "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant."  Marsh v. Anesthesia Serv. Med. Group. Inc., 200 Cal. App. 4th 480, 504 (2011).  "California recognizes a cause of action against noncontracting parties who interfere with the performance of a contract."  Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 513 (1994).  "However, consistent with its underlying policy of protecting the expectations of contracting parties against frustration by outsiders who have no legitimate social or economic interest in the contractual relationship, the tort cause of action for interference with contract does not lie against a party to the contract."  Id. (citations omitted).

Hagens Berman moves for summary judgment on McIlwain's IIPEA claim on the ground that the claim, which is predicated on Hagens Berman's alleged interference with the fee-splitting agreement to

1  which it is a party, fails as a matter of law because an IIEPA

2  claim can be asserted only against a person or entity that is not a

3  party to the contract at issue.

4      In its opposition, McIlwain appears to concede that its IIPEA

5  claim against Hagens Berman fails as a matter of law.  See Opp'n at

6  3 (stating that its IIPEA claim "became moot with the dismissal of

7  the individual partners from the case").

8      Because McIlwain's IIEPA claim against Hagens Berman is

9  premised on alleged interference with the fee-splitting agreement,

10  and it is undisputed that Hagens Berman is a party to that

11  agreement, the claim fails as a matter of law.  See Applied Equip.,

12  7 Cal. 4th at 513 (holding that "the tort cause of action for

13  interference with contract does not lie against a party to the

14  contract").

15                          CONCLUSION

16      For the reasons set forth above, the Court GRANTS Hagens

17  Berman's motion for summary judgment with respect to all three

18  claims in the complaint.  The Clerk shall enter judgment against

19  Plaintiff McIlwain and in favor of Defendants.  Defendants shall

20  recover their costs.  The Clerk shall terminate the action.

21      IT IS SO ORDERED.

22  Dated: February 10, 2020

23                          CLAUDIA WILKEN
                            United States District Judge

24

25

26

27

28

United States District Court
Northern District of California